# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00185-CR

---

**Charles Edward Smith, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-300235, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Charles Edward Smith of burglary of a habitation. *See* Tex. Penal Code § 30.02(a)(1), (3). Appellant elected to have the trial court decide his punishment, *see* Tex. Code Crim. Proc. art. 37.07(2)(b), and the trial judge assessed appellant's punishment, enhanced pursuant to the habitual-offender provision of the Penal Code, at confinement for twenty-five years in the Texas Department of Criminal Justice, *see* Tex. Penal Code § 12.42(d). On appeal, appellant challenges the sufficiency of the evidence supporting his conviction, complains about the admission of evidence of prior bad acts, and contends that the trial court erred in sentencing him as a habitual offender. We find no reversible error. However, through our own review of the record, we have found non-reversible error in the trial court's written judgment of conviction. We will modify the judgment to correct the error and, as modified, affirm the judgment.

## BACKGROUND

The jury heard evidence that five months after her husband of forty-one years passed away, Kathryn Smith went on a vacation with two of her three adult children, her stepdaughter and her son, and their families. Her stepson, appellant, did not accompany them. Smith was gone for approximately one week, between Christmas and New Year's, and returned home on December 31st. Upon her arrival back home, she noticed that the outside security light was off. She entered her home through the back door, which leads to the carport, and immediately saw a trail of mud and rust through her dining room that had not been there before she left on her vacation. She checked the windows and doors and found that none were broken or unlocked. Nothing in the home had been disturbed; no items throughout the house appeared disturbed. However, Smith discovered that her fireproof safe, which she kept in her bedroom closet, was missing. The missing safe was black with a grey door and had a combination dial and a key lock. The contents of the safe included jewelry (Smith's and her late husband's), collectible coins and paper bills, personal and family documents (such as birth certificates and property deeds), and $16,000 cash. Smith called 911 to report the burglary. She later compiled a complete list of the contents of the stolen safe when making an insurance claim, valuing the items taken at approximately $559,000 collectively.

Testimony from one of the police officers who responded to Smith's 911 call reflected that the police concluded that entry into the home had been made by way of the carport door. The hinges of that door, which were located on the exterior of the house, showed signs that they had been manipulated or tampered with. The officer also found a dolly in the carport area that was painted blue and had a flat tire. The officer explained that he believed that flecks of blue paint on the floor inside the house were consistent with the paint on the dolly. He also

2

opined that mud and water may have accumulated in the flat tire and caused the trail of mud and water, which extended through the house from Smith's bedroom to the carport door, when the dolly was used to remove the safe from the house.

Smith's stepdaughter, Kathleen Cook, arrived at Smith's house the night her stepmother discovered the burglary. Cook testified that she informed the police officers on the scene that she suspected that her brother, appellant, had burglarized the home. At trial, she explained her reasons for suspecting her brother. She said that appellant feared that he was not going to get his share of the inheritance from their father. She described a conversation with appellant in which he had expressed his belief that their stepmother was hiding their father's will in the safe. Cook also explained that when appellant was a teenager, he would sneak in and out of the house by taking the hinges off of doors to remove the doors, including the carport door.

Appellant's cousin, Michelle Kershner Kenneally, also responded to Smith's house the night the burglary was discovered. She too suspected that appellant had committed the burglary, though she did not share her suspicions with the police. She testified that her suspicion was based on a "process of elimination" of those who knew about the safe—a few immediate family members—combined with her knowledge of appellant's method of entering the house as a teenager by removing the carport door by taking off the hinges, which the police had concluded was the method of entry on this occasion.

To confirm (or dispel) their suspicions, Cook and Kenneally went to appellant's property that night after the police left. As they drove by, they observed a vehicle at the end of the driveway with several people trying to remove something from it. Kenneally described an "engine hoist" and a "large dark item." Cook described seeing a motor pulley next to the

3

vehicle. Both women testified that they returned to the property on subsequent occasions and, on one occasion in February, they saw the safe, from a distance, on appellant's property.[1]

The police detective who conducted the follow-up investigation of the burglary of Smith's house testified at trial. He described the burglary as a "targeted burglary" based on the limited items taken, the method of entry, and how the crime was perpetrated. He explained that this burglary scene differed from a "typical burglary" in that there was no sign of forced entry, there was no evidence of ransacking (that is, no items in the home were displaced), and the usual type of items stolen in a residential burglary—valuable items that are easily removed and can be disposed of quickly, such as televisions, laptops, cell phones, and firearms—were not taken from Smith's home. Instead, only one item was taken, which, the detective explained, often suggests that the suspect is known to the resident.

The jury also heard the testimony of a pawn-shop employee and a pawn-shop owner who identified appellant as someone who had pawned various items in their stores. Their testimony established that appellant pawned numerous jewelry items and a collectible coin at these pawn shops shortly after the burglary of Smith's home. The descriptions on the pawn-shop forms of the items that appellant pawned matched descriptions of items that Smith reported as being in the stolen safe.[2] A surveillance video at one of the pawn shops showed appellant pawning a diamond pendant. This pendant was recovered from the pawn shop by the burglary

---

[1] Both women explained that they did not go onto appellant's property, but only drove by it, because of the dogs running loose on the property.

[2] The forms indicated that several of the jewelry items were damaged. Smith testified that the jewelry items in her safe matched the description of the pawned jewelry, except that the items were not damaged when they were in her safe. The burglary detective explained that it is not uncommon for individuals to damage jewelry items—for example, break them or remove the stones—so the pieces are not easily identifiable.

detective during his investigation. The detective met with Smith, who confirmed "without any hesitation" that the pendant belonged to her and was one of the jewelry items in the stolen safe. The pendant was returned to Smith.

Appellant was subsequently charged by indictment with the burglary of his stepmother's house. The State called seven witnesses at trial: Smith, Cook, Kenneally, the responding police officer, the burglary detective, and the two individuals from the pawn shops. The defense called one witness: appellant's girlfriend, who lived with appellant part-time.[3] She testified that she never saw a safe on their property. During her testimony, photographs taken more than one year after the burglary—which depicted black rectangular items on the property that could have been "misconstrued" as being a safe—were admitted into evidence. Appellant's girlfriend also said that appellant received several pieces of broken jewelry—"like maybe a pair of earrings that were broken, maybe the post had broken on them, or broken necklaces, something like that"—from his father before his death.

The jury found appellant guilty of burglary of a habitation as charged in the indictment. Appellant elected to have the trial court assess his punishment. At the beginning of the punishment phase, appellant pled true to the allegations in the enhancement paragraphs of the indictment. The trial court sentenced appellant to twenty-five years in prison pursuant to the habitual-offender provision of the Penal Code. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

---

[3] The record reflects that appellant's girlfriend was, at times, employed in Houston and split her time between the two locations.

**DISCUSSION**

Appellant raises three points of error. In his first point of error, he claims that the evidence is insufficient to support his conviction for burglary of habitation because it failed to prove that he is the person who burglarized his stepmother's home. In his second point of error, he argues that the trial court erred in admitting evidence of his prior bad acts as a teenager (of leaving and entering the home by taking off door hinges to remove the doors) because the minimal probative value of the evidence was outweighed by its prejudicial effect. In his third point of error, appellant asserts that the trial court violated his constitutional rights by sentencing him as a habitual offender when, according to appellant, he was not given proper notice of enhanced punishment as a habitual offender.

**Sufficiency of the Evidence**

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Musacchio v. United States*, — U.S. —, 136 S. Ct. 709 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013,

no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 136 S. Ct. at 715 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must

7

"determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *accord Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317.

As charged in the indictment in this case, a person commits burglary of a habitation if the person, without the effective consent of the owner, enters a habitation with the intent to commit theft or enters a habitation and commits or attempts to commit theft. *See* Tex. Penal Code § 30.02(a)(1), (3). As relevant to this charge, a person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. *Id.* § 31.03(a).

The undisputed evidence at trial showed that someone entered Smith's home while she was away on vacation, without her permission or consent,[4] and removed her fireproof safe and all its contents, which included jewelry, collectible coins and paper bills, personal and family documents, and $16,000 cash. In his sufficiency challenge, appellant disputes that the evidence demonstrated that he was the person who did so. He contends that there was

---

[4] At trial, Smith testified that the only person who had permission to enter her home was a co-worker who was taking care of her cats while she was on her vacation. She explicitly stated that appellant did not have her consent or permission to enter her home.

"absolutely no evidence that [he] was in the home with the intent to commit theft" and asserts that the "tenuous" nature of the State's case, which, according to appellant, was "full of disparate facts," provided only weak circumstantial evidence that did not provide proof beyond a reasonable doubt.

A criminal conviction may be based on circumstantial evidence. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014); *Temple*, 390 S.W.3d at 359; *see Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. As noted previously, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales*, 414 S.W.3d at 742 (citing *Hooper*, 214 S.W.3d at 13); *see Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Nowlin*, 473 S.W.3d at 317. In such cases, it is not necessary that every fact and circumstance "point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Acosta*, 429 S.W.3d at 625 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

Juries are permitted to draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial. *Tate*, 500 S.W.3d at 413 (citing *Jackson*, 443 U.S. at 319); *Hooper*, 214 S.W.3d at 16–17. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper*, 214 S.W.3d at 16; *see Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013). Furthermore, jurors may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when drawing inferences from the evidence. *Acosta*, 429 S.W.3d at 625; *Boston v. State*,

373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

The evidence in this case showed indications that the hinges on the carport door of Smith's house had been tampered with—pry marks on and next to the hinges, which were partially out. A reasonable inference from this evidence is that the pry marks were made when the burglar took the hinges off the carport door to remove the door to enter the home—particularly given the evidence showing that none of the other doors or windows were unlocked or broken. In fact, the evidence reflected that the police reached this conclusion after viewing the pry marks and signs of tampering on the carport door and excluding other possible entry points, such as the sliding glass door, which remained secured by a rod placed in the door. Testimony established that, as a teenager, appellant routinely entered the home after sneaking out by removing the carport door after taking the door's hinges off. The evidence also showed that the security light on the house—which was light sensitive, so it came on at dark and went off when it was light—was not on when Smith returned from her vacation. Testimony showed that appellant was the one who installed the security light at Smith's home and therefore knew how to turn it off.

In addition, the evidence established that the only item taken from the home was the safe (and its contents), which only a few immediate family members—including appellant—had knowledge of. The evidence also indicated that Smith's own dolly was used to move the safe out of the home. The jury could reasonably infer that appellant, a family member who, the evidence showed, helped his father with maintenance-type repairs around the house, would have known that such transport was readily available on the scene. Additional evidence indicated that appellant had a motive for stealing the safe—his belief that it contained his father's will that his

10

stepmother was hiding as well as valuable items that appellant believed were part of his inheritance, which he feared being deprived of. The limited nature of the theft supports the notion that, as explained by the burglary detective, this was a targeted burglary.[5]

Further, the evidence showed that less than a week after Smith's house was burglarized, appellant pawned numerous items, including jewelry and a twenty-peso coin, that matched the descriptions of items that Smith reported being in the stolen safe. Testimony from the pawn-shop personnel who completed the pawn-shop forms when appellant pawned the items indicated that most of the pawned items—including the twenty-peso coin—were not recoverable as the metal had already been melted down. However, the burglary detective recovered one of the pawned jewelry items—a diamond pendant. The security surveillance video from that pawn shop shows appellant pawning that pendant. Smith recognized the pendant as one of the jewelry items that was in the stolen safe, and it was returned to her.

In addition, both appellant's cousin and his sister testified that they saw the safe, albeit from a distance, on appellant's property after the burglary.[6] Kenneally took photographs on her phone, and those photographs, depicting what the women saw, were admitted into evidence for the jury to evaluate.

In sum, the circumstantial evidence in this case supported the inference that appellant entered into his stepmother's home through the carport door in the same manner that he did as a teenager when he lived in the home. In addition, the evidence demonstrating the removal of property from the home—that is, the theft of the safe and its contents—supported the

---

[5] Smith testified that four laptops, two desktop computers, multiple flat-screen TVs, jewelry boxes on her dresser, a "big bottle of change," and several weapons were not taken.

[6] The testimony at trial described appellant's property as a "junkyard" in that he collected or hoarded various items that he "tinkered" with.

11

inference that appellant entered the home with intent to commit theft or entered the home and committed theft. Evidence that appellant pawned items from the stolen safe—only days after the burglary—showed appellant's possession of the stolen safe and items from it. *See Nisbett v. State*, 552 S.W.3d 244, 266 (Tex. Crim. App. 2018) (observing that circumstantial evidence can link defendant to commission of offense). In addition, the evidence demonstrated that appellant had a motive and the opportunity to perpetrate the burglary. *See id.* at 265 (noting that opportunity, when coupled with motive, is indicative of guilt).

In his sufficiency challenge, appellant complains about "contradicting witness testimony" and challenges the credibility of his cousin and his sister. He argues that without the "faulty testimony" presented by his cousin and his sister, no evidence demonstrated that appellant had the stolen safe in his possession. However, the jury, as the factfinder, was the exclusive judge of the facts and sole judge of witness credibility and was entitled to weigh the evidence and resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Zuniga*, 551 S.W.3d at 733. The jury was entitled to find the testimony of appellant's sister and his cousin to be credible, not "faulty," and believe that they saw the stolen safe on appellant's property. Moreover, this argument ignores the photographs that Kenneally took, which reflected what she and Cook saw on appellant's property—an item similar in shape, size, and color to the stolen safe that both women testified they recognized as being the stolen safe—that corroborated the other evidence demonstrating that appellant had possession of the safe immediately after the burglary.

Appellant also maintains that the evidence of his possession of the pawned diamond pendant fails to show that he had possession of the stolen safe because, according to appellant, Smith was unable to identify the pendant as hers. While it is true that Smith testified

at trial that she "couldn't swear that the pendant was hers, but [she] had one like it," the burglary detective explained that Smith signed a sworn statement saying that it was hers when she claimed it. The jury was entitled to resolve this evidentiary inconsistency as it had the opportunity to observe Smith's demeanor when she testified and take into consideration her reluctance to believe that her stepson burglarized her home.[7] *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) (observing that jury "may accept one version of the facts and reject another, and it may reject any part of a witness's testimony"). We must defer to the jury's resolution of any alleged conflicts or inconsistencies. *Zuniga*, 551 S.W.3d at 733; *see Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) ("A reviewing court is thus 'required to defer to the jury's credibility and weight determinations.'" (quoting *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010))).

Appellant concedes that the evidence at trial demonstrated a motive and opportunity for him to commit the burglary but argues that this evidence does not constitute proof beyond a reasonable doubt. He complains about particular evidence missing from the trial evidence—for example, physical evidence, such as the items that appellant pawned (to confirm that they were in fact pieces from the stolen safe); corroborating evidence, such as photographs of the pawned items (to compare to admitted photographs depicting Smith and her husband wearing jewelry items kept in the safe); and forensic evidence, such as appellant's fingerprints on the hinges of the carport door.[8] However, "the law requires no particular type of evidence" to

---

[7] Smith explained that she "didn't want to believe it, even with the picture of him" pawning the pendant and expressed that she still did not want to believe it as she testified at trial.

[8] Testimony at trial reflected that the prints taken at the scene, including from the carport door's hinges, were not viable prints—that is, they were not of sufficient quality to be used for fingerprint comparison.

prove guilt. *Johnson*, 560 S.W.3d at 226; *see Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Circumstantial evidence, such as physical evidence, forensic evidence, or electronic evidence, can link a defendant to the commission of an offense. *See Nisbett*, 552 S.W.3d at 266.

Moreover, appellant's focus is contrary to the well-established procedure for conducting a legal-sufficiency review. *See Clayton*, 235 S.W.3d at 778 (in conducting legal-sufficiency review, courts assess "all of the evidence" admitted at trial); *Boston*, 373 S.W.3d at 836 ("In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense.") (citations omitted). In reviewing the sufficiency of the evidence, we assess whether the jury's finding of guilt was justified considering the evidence that was admitted at trial, not what evidence is absent from the record.

Furthermore, when examining the legal sufficiency of the evidence, the reviewing court must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Zuniga*, 551 S.W.3d at 733; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). By examining the evidence piecemeal and offering alternative explanations for it—for example, appellant argues that the photographs admitted during his girlfriend's testimony showed that the item that his cousin and his sister saw on his property could have been a different item of similar size, shape, and color and not the stolen safe—appellant engages in this type of impermissible analysis. *See Murray*, 457 S.W.3d at 448 (observing that "[a]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence" (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013))). "Legally

sufficient evidence need not exclude every conceivable alternative to a defendant's guilt." *Johnson*, 560 S.W.3d at 226 (citing *Ramsey v. State*, 473 S.W.3d 805, 811 (Tex. Crim. App. 2015)); s*ee Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex. Crim. App. 1991) (disavowing reasonable-alternative-hypothesis construct), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 570 (Tex. Crim. App. 2000).

Based on the combined and cumulative force of the circumstantial evidence, along with the reasonable inferences drawn from it, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was the person who entered Smith's home without her consent and stole the safe and its contents. Therefore, we hold that the evidence is sufficient to support appellant's conviction for burglary of a habitation. *See Nisbett*, 552 S.W.3d at 266–67. Accordingly, we overrule appellant's first point of error.

**Evidence of Prior Bad Acts**

At trial, appellant's sister, Kathleen Cook, testified about the reasons that she thought that her brother had burglarized their stepmother's home, including her observations of the property after the burglary. When discussing her observations, the following exchange took place:

> Q. Did you notice anything particular about the security lights?
>
> A. Yes. The security light in the front was off, and you have to be — you have to go inside to turn the light off. And most people don't know — I mean, you wouldn't know where to turn the light off at. And [appellant] is the one that wired it for my dad. And the police were taking pictures of the door and where that he — where whoever it was had entered the house, and the hinges were taken off the outside.
>
> Q. Did that seem a point of interest to you that the hinges had been brought up?

15

A.    (Moving head up and down).

Q.    Why is that?

A.    Because he had entered the house that way before.  And when we were younger —

At that point, appellant objected and asked to approach the bench.  At the bench conference, the prosecutor explained that the witness "was about to say [that] when they were young, [appellant] used to sneak out of the house and come back in, like every teenager."  Appellant complained, "There's no relevance.  It's a prior bad act."  The prosecutor responded, "It's sneaking into your house when you're a teenager."  The trial court overruled the objection.

Cook then explained that because appellant would sneak out of the house, their dad would lock the outside of appellant's door in order to keep appellant inside, but appellant would take the hinges off the door and remove the door to get out.  She also explained that if her dad locked the windows and doors after appellant had snuck out, appellant would come in the side door of the house (the carport door) by taking off the hinges and removing the door.

In his second point of error, appellant contends that the trial court committed reversible error by admitting the testimony about his prior bad acts of taking off door hinges to remove doors to leave and enter the house.  Citing Texas Rule of Evidence 403, he contends that the evidence was intended to show "[his] skill or propensity to get in and out of the house without doing damage" and was "clearly prejudicial" to appellant.

Preservation of error is a systemic requirement on appeal.  *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016); *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014).  To preserve a complaint for appellate review, a party must timely object and

16

state the grounds for the objection with enough specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). While no "magic words" or citation to specific statutes or rules is required to preserve a complaint for appeal, a party must convey the substance of the complaint to the trial court clearly enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error. *Ex parte Marascio*, 471 S.W.3d 832, 842 (Tex. Crim. App. 2015); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). Further, if a complaint on appeal does not comport with the objection made at trial, error has not been preserved. *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

At trial, appellant objected to the admission of the evidence about his prior conduct of entering and exiting the house by taking door hinges off to remove the doors because it was "not relevant" and was "a prior bad act." These statements assert an objection under Texas Rules of Evidence 401 and 402, *see* Tex. R. Evid. 401 (setting forth test for relevance), 402 (stating that irrelevant evidence is inadmissible), and suggest an objection under Rule 404(b) (providing that evidence of prior bad acts is inadmissible as character-conformity evidence). However, appellant's complaint on appeal is premised on Texas Rule of Evidence 403, which provides that the trial court may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

Reviewing appellant's objections during the bench conference, we conclude that appellant did not object on the ground that the evidence of his teenage conduct was unfairly prejudicial. Appellant did not refer to Texas Rule of Evidence 403 or use any language that would have informed the trial court that appellant's objection to the admission of the evidence

17

was based on its unfairly prejudicial nature. On the record before us, we cannot conclude that the trial court would have understood that appellant was objecting to the introduction of the evidence on the basis of Rule 403. Nor can we conclude that a Rule 403 objection was apparent from the context. Therefore, we conclude that appellant's Rule 403 complaint—which does not comport with the objections made at trial and is raised now for the first time on appeal—was not preserved for appellate review. *See Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) ("Because the complaint on appeal does not comport with either of the trial objections, nothing is presented for review."). Accordingly, we overrule appellant's second point of error. [9]

## Punishment as Habitual Offender

The indictment in this case contains two enhancement paragraphs that allege two sequential prior felony convictions.[10] At the beginning of the punishment phase, the prosecutor

---

[9] Appellant describes the complained-of evidence as "proof of an extraneous act" when complaining that it should have been excluded under Rule 403 because of its prejudicial effect. To the extent that appellant suggests that the evidence constituted evidence of an extraneous bad act inadmissible under Rule of Evidence 404(b), we observe that appellant's brief fails to include the applicable law concerning the admission (or exclusion) of extraneous-conduct evidence, any analysis of how the law applies here, or any argument that the evidence should have been excluded because it was inadmissible character-conformity evidence. Thus, any contention that the trial court erred by admitting the evidence of appellant's prior bad acts because it was inadmissible character-conformity evidence is inadequately briefed and, therefore, we do not address it. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (stating inadequately briefed point of error presents nothing for review).

[10] Specifically, the indictment contains the following enhancement paragraphs:

ENHANCEMENT PARAGRAPH 1

And it is further presented to said Court that prior to the commission of the offense or offenses set out above said Defendant was finally convicted of the

read the enhancement paragraphs of the indictment in open court, and appellant pled true to both paragraphs. Consequently, the trial court punished appellant pursuant to the habitual-offender provision of the Penal Code. *See* Tex. Penal Code § 12.42(d) (providing that at trial of felony offense other than unaggravated state jail felony, defendant shall be punished by imprisonment for life or any term not more than ninety-nine years or less than twenty-five years upon proof of two previous sequential felony convictions).

In his third point of error, appellant argues that the trial court "reversibly erred by sentencing [him] as a habitual offender." He does not dispute that he was provided notice of two sequential prior felony convictions in the indictment. However, he complains that "[n]o where [sic] on the indictment or any other document filed by the State identifies [sic] the State's notice that any enhancement would be subject to the range of punishment of no less than 25 years not more than 99 years in prison." Thus, he claims that he was "not properly noticed of his eligibility for punishment as a habitual offender under Penal Code section 12.42" but "only properly noticed of an enhancement to a 1st degree felony," which, he contends, violated his right to due process under the United State Constitution and his right to due course of law under the Texas Constitution.

---

felony offense of Theft, in the 331st Judicial District Court of Travis County, Texas, in Cause Number 994,954, on the 23rd day of March, 2000,

ENHANCEMENT PARAGRAPH 2

And that prior to the commission of the offense or offenses for which the defendant was convicted as set out above, the defendant was finally convicted of the felony offense of Burglary of a Building, in the 331st Judicial District Court of Travis County, Texas, in Cause Number 101,389, on the 21st day of November, 1994[.]

19

As noted previously, preservation of error is a systemic requirement on appeal. *Darcy*, 488 S.W.3d at 327; *Bekendam*, 441 S.W.3d at 299. To preserve a complaint for appellate review, a party must timely object, stating the specific legal basis for the objection. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844. Even constitutional rights—including the right of due process and the right of due course of law—may be forfeited if the proper objection is not asserted in the trial court. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (citing *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)); *see Saldano v. State*, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002). At no point in the trial court below did appellant object to being punished as a habitual offender or complain about any alleged deficiency in the notice of enhanced punishment. Thus, he has failed to preserve this complaint for appellate review.[11] We overrule appellant's third point of error.

---

[11] We observe that on its face the indictment alleges two sequential prior felony convictions that, if proven, would invoke the habitual-offender punishment range set forth in Penal Code section 12.42(d). *See* Tex. Penal Code § 12.42(d).

Moreover, the record in this case reflects that, based on the notice provided by the allegations of two sequential prior convictions in the enhancement paragraphs of the indictment, the trial court informed appellant at his arraignment proceeding—almost four months before trial—that, if both enhancement allegations were proven, he was subject to punishment as a habitual offender. Specifically, after the trial court informed appellant that "this indictment is for burglary of a habitation, enhanced" and confirmed that appellant had been served with a copy of the indictment, the following exchange ensued between the court and appellant:

THE COURT: So you do understand what you are charged with?

APPELLANT: Yes, ma'am.

THE COURT: You understand that the offense of burglary of a habitation is a second-degree felony and it normally carries from 2 to 20 years and a $10,000 fine as possible punishment?

APPELLANT: Yes, ma'am, I do.

20

## Error in Written Judgment

On review of the record, we observe that the written judgment of conviction in this case contains non-reversible clerical error. The judgment states that the "Statute for Offense" is "PC 30.02(c)(2)." This statutory provision of the Penal Code establishes that burglary of a habitation is, generally, a second-degree felony. However, the applicable statutory provisions for the burglary offense for which appellant was convicted are sections 30.02(a)(1) and 30.02(a)(3) of the Penal Code, the statutory provisions that define the offense of burglary of a habitation as charged in this case.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment of conviction to reflect that the "Statute for Offense" is "PC 30.02(a)(1), (3)."

## CONCLUSION

Having concluded that the evidence is sufficient to support appellant's conviction, that appellant failed to preserve his complaint that the admission of evidence of his prior bad acts violated Rule 403, and that appellant failed to preserve his claim that being sentenced as a habitual offender violated his constitutional rights but having found non-reversible clerical error

---

THE COURT:    If one enhancement is proven, it bumps it up to a first-degree felony, 5 to 99 or life as punishment range, along with a fine. If two are proven, it makes it a habitual indictment with a minimum of 25 years, same punishment range on the upper end with the fine as well.

APPELLANT:    Yes, ma'am.

in the written judgment of conviction, we modify the judgment as noted above to correct the error and affirm the trial court's judgment of conviction as modified.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Modified and, as Modified, Affirmed

Filed:   December 31, 2019

Do Not Publish