# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00134-CR

---

**William Ellis Douglass, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 453RD DISTRICT COURT OF HAYS COUNTY
### NO. CR-18-0884-E, THE HONORABLE DAVID JUNKIN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Following the denial of his pretrial motion to suppress evidence, appellant William Ellis Douglass pleaded guilty to unlawful possession of a firearm by a felon; possession of marijuana, in the amount of 50 pounds or less but more than five pounds; and possession with intent to deliver a controlled substance, tetrahydrocannabinols, in the amount of four grams or more but less than 400 grams. *See* Tex. Penal Code § 46.04(a); Tex. Health & Safety Code §§ 481.113(d), 481.121(b)(4). Pursuant to a plea agreement, Douglass pleaded true to an enhancement paragraph, and the trial court sentenced him to fifteen years' confinement for each offense, with the sentences to run concurrently. *See* Tex. Penal Code §§ 3.03(a), 12.32(a). In a single point of error, Douglass challenges the trial court's denial of his motion to suppress. We will affirm the trial court's judgments of conviction.

## BACKGROUND[1]

On the morning of February 2, 2018, in a 911 call to the Kyle Police Department (KPD),[2] an unidentified individual reported that a package containing marijuana had been mailed to his house via FedEx. The individual requested that officers "intercept" the package, explaining that he was "tired of doing what [he's] doing" and had "made enough money." He insisted that officers not come to his house but instead confiscate the package before it arrived, as "once it lands, [he's] responsible." When the 911 operator asked the individual's name, he demurred, responding, "I don't want no names. I'm not trying to get in trouble." Nevertheless, he provided the operator with an address in Kyle, Texas, as well as the package's tracking number.

KPD Officer Dustin Shuler testified that investigators were interested in the individual based upon the possibility of his possessing narcotics or the proceeds of their sale. Officers identified the caller as Douglass by matching the caller's number and the address he provided to him. Shuler discussed the case with KPD Detective Joseph Swonke. Swonke had previously spoken with a detective in the Austin Police Department, who had been contacted by someone "trying to get out of the game, and [who] wanted a package intercepted."

Shuler, driving a marked patrol vehicle, parked near Douglass' house and began surveilling him, "hoping to . . . get him leaving the house and get him at a traffic stop for further investigation." Over the next ten to fifteen minutes, Shuler witnessed Douglass make

---

[1] The facts recited are taken from the testimony and evidence presented at the suppression hearing.

[2] A recording of the 911 call was admitted into evidence at the suppressing hearing.

2

approximately five trips between his home and vehicle, loading the SUV with a "large quantity of things" and locking the vehicle each time he went back inside.

Eventually, Douglass drove his vehicle down Amberwood South toward its intersection with the Interstate 35 Frontage Road. The intersection, at which Amberwood South dead-ends into the frontage road, contains a stop sign facing traffic on Amberwood South; there is no crosswalk or stop line.

Shuler followed Douglass' vehicle and, he testified, maintained a "constant visual."[3] As Shuler approached the intersection, Douglass' vehicle was stopped behind another, near the intersection. A third vehicle was positioned between Shuler's patrol car and Douglass' vehicle. After the vehicle in front cleared the intersection, Douglass turned right onto the frontage road without stopping a second time. Although Shuler testified that there were "several things" that could have obstructed Douglass' view while he was stopped, three defense experts testified that there were no obstructions present at the intersection.

Shuler testified that he stopped Douglass' vehicle after it made the turn "[b]ased off reasonable suspicion of there possibly being narcotics or proceeds of, or distribution of narcotics within the vehicle as well as the traffic offense [he] observed." Officers searched the vehicle and discovered 2.6 pounds of marijuana, THC edible chocolates, drug paraphernalia, a firearm, and money believed to be the proceeds of the distribution of narcotics.

Douglass filed a motion to suppress, challenging the admissibility of the seized evidence. The trial court denied the motion following a pretrial evidentiary hearing. Both parties' arguments at the hearing principally concerned the meaning of section 544.010(c) of the

---

[3] A dashcam video from Shuler's patrol car, admitted into evidence at the hearing, begins just before Shuler turns onto Amberwood South.

3

Texas Transportation Code and whether Shuler had reasonable suspicion to believe that Douglass had committed a traffic violation under the statute. As defense counsel explained: "[T]he question is the stop. Our position is they had no reasonable suspicion, certainly not under the law, and there was not a traffic offense." Upon Douglass' request, the trial court issued, in part, the following written findings of fact and conclusions of law:

FINDINGS OF FACT

. . . .

3. Officer Shuler observed the Defendant's vehicle approach the intersection of Amberwood [South] and the Interstate 35 ("I-35") frontage road. There was one vehicle between Officer Shuler's patrol car and the Defendant's vehicle.

4. [T]here was no crosswalk or clearly marked stop line at the intersection of Amberwood [South] and the I-35 frontage road. The Court finds that Officer Shuler observed that there was no crosswalk or clearly marked stop line at that intersection.

5. [T]he Defendant's vehicle came to a complete stop behind another vehicle that was also stopped at the intersection of Amberwood [South] and the I-35 frontage road.

6. [T]he Defendant's vehicle stopped at a distance of at least one car length away from the intersection. "Intersection" as used herein refers to the line where Amberwood [South] and the I-35 frontage road meet.

7. [A]fter the vehicle in front of the Defendant's vehicle proceeded to turn right onto the I-35 frontage road, the Defendant's vehicle also proceeded to turn right onto the frontage road without stopping a second time at the intersection.

8. [T]here was no evidence of any obstructions that would have interfered with the Defendant's view of the approaching traffic on the I-35 frontage road if he had stopped at the place nearest the intersection.

9. Officer Shuler observed the following: (i) the Defendant's vehicle stopped behind the vehicle immediately in front of it at the intersection; (ii) the Defendant's vehicle stopped at least one car length away from the intersection; (iii) the vehicle in front of the Defendant's vehicle turned onto the I-35 frontage road; and (iv) the Defendant's vehicle turned onto the I-35 frontage road without stopping a second time at the intersection.

10. Officer Shuler reasonably believed that, based on the above observations, the Defendant had committed a traffic violation.

11. Officer Shuler subsequently stopped the Defendant's vehicle.

CONCLUSIONS OF LAW

. . . .

4. [V]iewing the credible evidence objectively, a preponderance of the evidence establishes that the Defendant did come to a complete stop before arriving at the intersection of Amberwood [South] and the I-35 frontage road.

5. [V]iewing the credible evidence objectively, a preponderance of the evidence establishes that the Defendant did not stop at the place nearest the intersecting roadway—the I-35 frontage road—where he had an unimpeded view of approaching traffic.

6. [V]iewing the credible evidence objectively, a preponderance of the evidence establishes that Officer Shuler had an objectively reasonable basis to believe that the Defendant engaged in a traffic violation.

. . . .

8. [V]iewing the credible evidence objectively, a preponderance of the evidence establishes that Officer Shuler had reasonable suspicion sufficient to justify the stop.

9. [T]he Court finds that the motion to suppress based on the stop should be denied.

After the denial of his motion to suppress, Douglass pleaded guilty to the charged offenses pursuant to a negotiated plea agreement. As part of the plea agreement, Douglass pleaded true to an enhancement paragraph. In accordance with the plea agreement, the trial court sentenced Douglass to fifteen years' confinement for each offense and ordered that the sentences run concurrently. The court certified Douglass' right to appeal the pretrial ruling on his motion to suppress.

## DISCUSSION

In his sole issue on appeal, Douglass contends that the trial court abused its discretion by denying his motion to suppress because there was no legal basis for the traffic stop. Since the stop was improper, he argues, "the fruits of that search should have been suppressed."

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, applying a bifurcated standard of review. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). "A trial court's ruling on a motion to suppress . . . should be reversed only if it is outside the zone of reasonable disagreement." *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021), *cert. denied*, 142 S. Ct. 821 (2022). We afford almost total deference to the trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). We review de novo a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Id*.

The Fourth Amendment prohibits unreasonable searches and seizures. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). "When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *Cortez*, 543 S.W.3d at 204. An officer may conduct a warrantless traffic stop in compliance with the Fourth Amendment if the "reasonable suspicion" standard is satisfied. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *see Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). The validity of the stop should be determined "solely by analyzing objectively the facts surrounding the event." *Garcia v. State*, 827 S.W.2d 937, 943 (Tex. Crim. App. 1992). The proper inquiry "is not whether appellant was guilty of the

traffic offense but whether the trooper had a reasonable suspicion that she was." *Jaganathan*, 479 S.W.3d at 247.

An officer has reasonable suspicion if "he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The standard is objective and disregards the subjective intent of the officer, instead looking to whether there existed "an objectively justifiable basis for the detention." *Id.* It requires only "some minimal level of objective justification" for the stop. *Hamal*, 390 S.W.3d at 306. Whether an officer had reasonable suspicion is a mixed question of law and fact subject to de novo review on appeal. *Id.*; *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

In determining whether Shuler had reasonable suspicion to stop Douglass for a traffic violation under section 544.010(c), our analysis begins at the plain language of the statute. It provides, in relevant part, that drivers approaching an intersection with a stop sign "shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." Tex. Transp. Code § 544.010(c).

Douglass and the State urge different readings of where, under the statute, a driver is required to stop. Douglass insists that the statute requires drivers to stop "nearest to the point where their view allows them to make" a determination as to whether the intersection is clear and may be entered safely. He alleges that this "means any stop before the intersection where [the driver] can see approaching traffic well enough to determine if it is safe to use the intersection complies with the law." The State, conversely, claims, "There is only one way to read this

7

provision: it requires a driver to stop at a point as close as possible to the intersecting roadway without actually entering that roadway."

"All statutory construction questions are questions of law, so we review them de novo." *Martin v. State*, 635 S.W.3d 672, 677 (Tex. Crim. App. 2021) (citing *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). The Transportation Code is subject to construction under Chapter 311 of the Government Code, which mandates that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," unless they have "acquired a technical or particular meaning." Tex. Gov't Code § 311.011; *see* Tex. Transp. Code § 1.002; *Lang v. State*, 561 S.W.3d 174, 180 (Tex. Crim. App. 2018) ("We read words and phrases in context and construe them according to the rules of grammar and common usage.").

When interpreting a statute, we "seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Lang*, 561 S.W.3d at 179. To do so, "we look to the literal text of the statute for its meaning." *Martin*, 635 S.W.3d at 677. "[W]e must 'presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.'" *Lang*, 561 S.W.3d at 180 (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). The statute must be read as a whole, and it is presumed that the entire statute is intended to be effective. *Franklin*, 579 S.W.3d at 386. Words not defined in the statute are used "in their ordinary and common sense." *Avery v. State*, 359 S.W.3d 230, 237 (Tex. Crim. App. 2012) (quoting *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim App. 2011), *overruled on other grounds by Fisk v. State*, 574 S.W.3d 917, 926 (Tex. Crim. App. 2019)).

8

The issue before the Court has been addressed in an unpublished opinion from our sister court. The facts in *Carter v. State*, No. 01-09-01069-CR, 2010 WL 2650538 (Tex. App.—Houston [1st Dist.] July 1, 2010, no pet.) (mem. op., not designated for publication), are similar to those of the present case:

> [Deputy] Lina saw a small car pull up to the stop sign and stop. Carter, driving an SUV, also pulled up and stopped behind the stopped car. That car then drove through the intersection. Carter immediately pulled ahead and turned right onto Ninth Street, without stopping a second time or waiting until the car ahead of him cleared the intersection. Lina agreed with defense counsel that Carter had stopped "one small car length or less than one small car length" from the stop sign, depending on where the car in front of him stopped.

*Id*. at *1. Carter was subsequently stopped and arrested for driving while intoxicated. *Id*. In a motion to suppress, Carter argued that Lina lacked reasonable suspicion to stop him or probable cause to arrest him for DWI. *Id*. Emphasizing the language "nearest the intersecting roadway," the appellate court explained:

> Because the Transportation Code requires a driver to stop at the place "nearest the intersecting roadway" where he can see approaching traffic, and Carter stopped approximately one car length before the stop sign, we hold that the trial court reasonably could have determined that Lina had probable cause to believe that Carter violated section 544.010(c).

*Id*. at *2. Mirroring Douglass' proffered interpretation here, Carter contended that the statute "only required [him] to 'stop at the place where he had a view of approaching traffic on the intersecting roadway'" and not at the stop sign. *Id*. at *3. The court rejected Carter's interpretation, adding:

> The Transportation Code requires that a driver stop in a place where he has a view of approaching traffic on the intersecting roadway. The Transportation Code also, however, requires the driver to stop at the place "nearest the intersecting

9

roadway" where he has a view of approaching traffic. Lina agreed that Carter could see approaching traffic from his position, but Lina also testified that Carter stopped approximately one car length behind the stop sign and drove through the intersection without waiting for the car ahead of him to clear it. Carter, therefore, did not stop at the "place nearest the intersecting roadway" where he could see approaching traffic.

*Id*.

Douglass' contention that the *Carter* decision did not consider his interpretation of 544.010(c) and instead "merely assumed the statute reads the way the State suggests" is unavailing. Carter advocated for precisely the reading advanced by Douglass in the present case. Similarly, his attempt to distinguish *Carter* owing to the fact that the defendant in that case pulled into the intersection before the car ahead had cleared it is unpersuasive. The *Carter* court's probable cause holding rested solely upon a violation of 544.010(c) and not, as Douglass suggests, of section 545.151.[4] *See id*.

We conclude that the relevant language of the statute is not ambiguous and agree with the *Carter* court that a plain-text reading of the language of section 544.010(c), as it pertains to intersections lacking crosswalks or stop lines, requires a driver both to (1) stop at the place nearest the intersecting roadway and (2) have a view of approaching traffic on the intersecting roadway. *See* Tex. Transp. Code § 544.010(c). "[W]here the operator has a view of approaching traffic on the intersecting roadway" is a relative clause that modifies the noun phrase "place nearest the intersecting roadway." To interpret the statute in the manner Douglass proposes, by contrast, reads the language "nearest the intersecting roadway" out of the statute. Requiring

---

[4] Section 545.151 of the Transportation Code provides in relevant part that a driver approaching an intersection may proceed, after stopping, "when the intersection can be safely entered without interference or collision with traffic using a different street or roadway." Tex. Transp. Code § 545.151.

10

drivers to stop nearest to where their view allows them to determine whether an intersection is safe to enter disregards the statute's wording. Because we must presume that every word in the statute was used for a purpose and ensure that each word, phrase, and clause is given effect, we are unable to adopt Douglass' interpretation. *See Lang*, 561 S.W.3d at 180. Giving full effect to the literal text of the statute requires more than that a driver merely stop where he or she can see approaching traffic.[5]

Under this interpretation of section 544.010(c), the trial court could reasonably have determined that Shuler had reasonable suspicion to stop Douglass for a violation of the statute. Douglass stopped at least one car-length from the intersection—which the officer could have reasonably believed was not "the place nearest the intersecting roadway"—and did not stop again prior to entering it. The trial court's ruling was not outside the zone of reasonable disagreement. Accordingly, we conclude that the trial court did not abuse its discretion in denying Douglass' motion to suppress. We overrule his sole issue.

**CONCLUSION**

Having concluded that the trial court did not abuse its discretion in denying Douglass' motion to suppress, we affirm the trial court's judgments of conviction.

---

[5] Douglass also argues that requiring a driver to stop "at the place nearest the intersecting roadway" is a standard "effectively impossible to meet" due to the alleged subjective nature of such a determination. Insomuch as he intends to suggest that reading the statute as written would lead to absurd consequences that the Legislature could not have intended, we reject his argument. *See, e.g.*, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 (2018) (observing that "[m]any perfectly constitutional statutes use imprecise terms").

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   February 24, 2022

Do Not Publish