

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0563-17

**TERRI REGINA LANG, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### BURNET COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, HERVEY, RICHARDSON, KEEL, and WALKER, JJ., joined. KELLER, P.J., filed a concurring opinion. YEARY, J., filed a dissenting opinion. NEWELL, J., concurred.

### O P I N I O N

The issue in this case is whether the statute defining the offense of organized retail theft permits a conviction for ordinary shoplifting by a single actor. *See* TEX. PENAL CODE § 31.16(b). Terri Regina Lang, appellant, challenges the sufficiency of the evidence to support her conviction for that offense after she was caught attempting to steal items from a grocery store. On direct appeal, appellant contended that her conduct in engaging in ordinary shoplifting, by herself and without the cooperation of others, could not, as a matter

of law, properly give rise to a conviction for organized retail theft. The court of appeals rejected her argument, concluding that the statutory language plainly permits a conviction under these circumstances. We granted appellant's petition for discretionary review to evaluate the court of appeals's analysis of her sufficiency challenge. We disagree with the court of appeals's conclusion that the organized retail theft statute plainly permits a conviction for this type of conduct, and we instead hold based on our analysis of the ambiguous statutory language, viewed in light of the statute's extensive legislative history, that this statute does not apply to the conduct of an ordinary shoplifter acting alone. Because the facts in this case show that appellant did not engage in any conduct beyond committing ordinary shoplifting by herself, we will vacate her conviction for organized retail theft. We reverse the judgment of the court of appeals and remand this case to that court for it to consider, in the first instance, whether the judgment should be reformed to any lesser included offense.[1]

## I. Background

In October 2013, appellant was shopping at HEB when an employee observed her placing unpaid-for merchandise into reusable shopping bags in her cart. Appellant also placed items inside a reusable shopping bag that was tied to the right-hand side of her cart. Thinking this behavior unusual, the employee began observing appellant as she shopped for around one hour. Appellant eventually finished shopping and headed towards the checkout.

---

[1] *See Thornton v. State,* 425 S.W.3d 289, 299-300 (Tex. Crim. App. 2014).

As appellant went through the checkout, the employee observed appellant place the reusable bags from inside her cart on the conveyor belt so that the items inside could be scanned by the cashier. However, appellant did not do so with the bag that was tied to the side of her cart. After appellant paid for the items that had been inside her cart, she loaded the items back into the cart and headed towards the store's exit. Once appellant had exited the main doors, the employee and her manager stopped appellant and questioned her about the bag tied to the side of her cart, which was full of unpaid-for items. The store employees called the police, who arrived and eventually arrested appellant. Upon tallying up the value of the items found in appellant's possession, store employees determined that the value of the unpaid-for merchandise totaled $565.59 before tax, whereas the paid-for merchandise totaled $262.17.

Appellant was charged and tried by a jury for the state-jail felony offense of organized retail theft involving merchandise valued at $500 or more but less than $1,500. *See* TEX. PENAL CODE § 31.16(b)(1), (c)(3) (West 2014).[2] After the jury convicted her, the trial court assessed her punishment at confinement for 20 months in a state-jail facility.

On direct appeal, appellant argued that the evidence was legally insufficient to support her conviction. Appellant presented two arguments in support of her position. First, she contended that the offense of organized retail theft cannot be committed by an ordinary

---

[2] The indictment alleged that appellant did "intentionally conduct and promote and facilitate an activity in which [she] received and possessed and concealed and stored stolen retail merchandise, to wit: groceries, herbal supplements, energy drinks, and animal treats, and the total value of the merchandise involved in the activity was greater than $500 but less than $1,500."

shoplifter acting alone—rather, the statute requires group action or collaborative effort. Second, she contended that it would lead to absurd results to construe the statute to permit a conviction for every instance of ordinary shoplifting. The court of appeals rejected these arguments. *Lang v. State*, No. 03-15-00332-CR, 2017 WL 1833477 (Tex. App.—Austin May 5, 2017) (mem. op., not designated for publication).

The court of appeals began its analysis by construing the statutory language, which provides that a person commits an offense if she "intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of: (1) stolen retail merchandise; or (2) merchandise explicitly represented to the person as being stolen retail merchandise." TEX. PENAL CODE § 31.16(b)(1), (b)(2). In rejecting appellant's contention that the statute requires group action and thus cannot be violated by a person acting alone, the court of appeals observed that the statute "has no explicit language regarding acting with others." *Lang,* 2017 WL 1833477, at *4. The court consulted dictionary definitions for the statutory terms "conducts, promotes, or facilitates," and it determined that the definitions for those terms "do not require (and are not limited to) collective behavior or group involvement." *Id.* Furthermore, viewing those statutory terms in context, the court observed that what is conducted, promoted, or facilitated is an "activity," not another person. *Id.* at *6. Thus, the court concluded, "Nothing in the statutory language requires that the person committing the offense work with others when engaging in the prohibited behavior." *Id.*

Regarding appellant's second contention—that the statute results in absurdity if construed to cover every act of ordinary shoplifting—the court of appeals also rejected that argument. With respect to this matter, appellant had contended that the statutory phrase referring to "stolen retail merchandise" suggests that the statute applies to a person whose criminal activity begins after a theft has already occurred; thus the statute addresses "post-theft activity, not a theft itself." In resolving this argument, the court of appeals observed that "stolen" is the past participle of "steal," which the Penal Code defines as "to acquire property or service by theft." *Id.* at *7 (citing TEX. PENAL CODE § 31.01(7)). The offense of theft, in turn, requires proof that a person "unlawfully appropriates property with intent to deprive the owner of property." *Id.* (citing TEX. PENAL CODE § 31.03(a)). Viewing these statutory requirements in conjunction with the language of the organized retail theft statute, the court of appeals reasoned that a person who commits theft by "unlawfully appropriat[ing] retail merchandise also 'possesses' stolen retail merchandise" within the meaning of the organized retail theft statute. *Id.* Thus, the court effectively held that a person who has committed theft of retail merchandise also necessarily commits the offense of organized retail theft. *Id.* Because the court of appeals concluded that the statutory language would permit only one reasonable understanding and thus was plain, it declined appellant's request that it consider extra-textual sources, including the statute's legislative history. *Id.*

Applying its understanding of the statutory requirements to the facts of appellant's case, the court of appeals upheld her conviction through the following reasoning:

The evidence in this case demonstrated that appellant unlawfully appropriated retail merchandise from HEB when she concealed various items in the reusable shopping bag tied to her shopping cart and attempted to leave the store without paying for the items. After committing the theft, she possessed stolen retail merchandise as she tried to leave the store with the unlawfully appropriated items. This evidence was sufficient to support the jury's verdict convicting appellant of organized retail theft.

*Id.*

We granted three grounds in appellant's petition for discretionary review to evaluate the court of appeals's analysis of her sufficiency challenge.[3]

## II. Analysis

In her petition for discretionary review, appellant challenges the court of appeals's analysis of the organized retail theft statute and its ultimate conclusion upholding her conviction. She asserts that the court of appeals erred by concluding that the statutory

---

[3]    Appellant's three grounds for review state as follows:

1. May this Court adhere to a rule that refuses to allow the consideration of legislative history to interpret a statute unless the statute is ambiguous, when the Legislature states that legislative history may be considered whether or not a statute is ambiguous?
   a. Must *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991) and its progeny be overruled to the extent they conflict with Texas Government Code Section 311.023, which Texas Penal Code Section 1.05(b) makes applicable to the Penal Code?

2. Does the organized retail theft statute admit of more than one reasonable interpretation with respect to whether the statute may be violated by a solitary actor committing ordinary shoplifting, and does consulting the plain language alone lead to absurd results that the legislature could not possibly have intended?

3. May a shoplifter violate the organized retail theft statute by committing ordinary shoplifting while acting alone?

language is plain and by declining to consider the legislative history, which she asserts clearly shows that the statute was not intended to apply to the conduct of an ordinary shoplifter acting alone. She contends that, to the extent this Court's precedent governing statutory interpretation disallows a court from consulting extra-textual sources except in the event of ambiguity or an absurd result, this Court should overrule that precedent and permit consideration of extra-textual sources regardless of whether the statutory language is ambiguous or plain. She further asserts that, properly interpreting the language in the organized retail theft statute in light of the clear legislative history, the statute targets activities that occur after retail merchandise has already been stolen, rather than the act of theft itself, and that the statute requires proof of collective or group effort to support a conviction. In view of these requirements, she maintains that the evidence is insufficient to support her conviction when the evidence adduced at trial showed only that she committed ordinary shoplifting by herself.

We agree with appellant's position that the court of appeals erred by concluding that the statutory language is plain and by holding that resort to extra-textual sources is not warranted. In view of the ambiguous statutory language and the relevant legislative history, we conclude that the organized retail theft statute was not intended to target the conduct of ordinary shoplifters acting alone, such as appellant, and instead requires proof of some activity that is distinct from the act of theft itself. With respect to appellant's ground asking this Court to modify its rules of statutory interpretation, we will decline to consider that issue

as it is unnecessary to the resolution of this case. After reviewing the applicable law, we explain each of these conclusions in turn below.

## A. Applicable Law

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In evaluating the legal sufficiency of the evidence to support a criminal conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319; *see also Cary v. State,* 507 S.W.3d 750, 757 (Tex. Crim. App. 2016).

Here, the parties do not dispute that the evidence, viewed in the light most favorable to the prosecution, shows that appellant stole items from HEB by placing them in her reusable shopping bag, failing to pay for those items in the checkout line, and then attempting to leave the store while still possessing the items. The dispute here centers on whether these facts, as a matter of law, are adequate to establish the offense of organized retail theft. To resolve this question, we must construe the organized retail theft statute to determine whether it properly reaches this type of conduct. *See Delay v. State,* 465 S.W.3d 232, 235 (Tex. Crim. App. 2014) (recognizing that sufficiency review sometimes "involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law").

When interpreting statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We focus our attention on the literal text of the statute in question and "attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id*. "[I]f the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning." *Id*. In interpreting the literal text of a statute, we must "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). We read words and phrases in context and construe them according to the rules of grammar and common usage. *Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014). Courts may consult standard dictionaries in determining the fair, objective meaning of undefined statutory terms. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

However, if a statute's language is ambiguous, or if application of the statute's plain meaning would lead to an absurd result that the Legislature could not possibly have intended, then a court may consider extra-textual factors. *Boykin*, 818 S.W.2d at 785-86. A statute is ambiguous when it "may be understood by reasonably well-informed persons in two or more different senses." *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012); *see also Baird v. State*, 398 S.W.3d 220, 229 (Tex. Crim. App. 2013) (statute is ambiguous when the

language it employs is "reasonably susceptible to more than one understanding"). On the other hand, a statute is unambiguous when it reasonably permits no more than one understanding. *State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007). Extra-textual factors that we may consider include (1) the object sought to be attained by the Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title or caption, preamble, and any emergency provision. TEX. GOV'T CODE § 311.023; *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). Statutory construction is a question of law that we review de novo. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009).

#### B. Analysis of Elements of Organized Retail Theft

In pertinent part, the elements of the offense of organized retail theft are:

> (b) A person commits an offense if the person intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of:
> (1) stolen retail merchandise[.]

TEX. PENAL CODE § 31.16(b).[4]

---

[4] The range of punishment for the offense is determined by the total value of the merchandise involved in the activity. TEX. PENAL CODE § 31.16(c). The statute further provides for an increased range of punishment if certain aggravating factors are present, including that the person "organized, supervised, financed, or managed one or more other persons engaged in an activity described by Subsection (b)," or tampered with a theft detector device or fire exit alarm or caused a fire exit alarm to sound during the commission of the offense. *Id.* § 31.16(d)(1), (d)(2). We note that, since the time of appellant's conduct in 2013, the Legislature has amended the organized retail theft statute once

Examining the statutory text as it would apply to these circumstances, we determine that it is susceptible of more than one reasonable interpretation, thereby rendering it ambiguous. The statutory language refers to an "activity" involving "stolen retail merchandise." *Id.* By its use of the past participle of steal (e.g., "stolen"), the statute indicates that whatever "activity" is covered takes place with respect to retail merchandise that has already been stolen. The question then arises as to what type of "activity" would suffice to satisfy the statute's requirements. Is it enough, as the court of appeals suggested, for a person to shoplift items of retail merchandise and then attempt to leave the store with the stolen items, thereby conducting an activity (leaving the store) in which the person possesses the retail merchandise she has just stolen? *See id.*; *Lang*, 2017 WL 1833477, at \*7. Or, on the other hand, as appellant suggests, does the entire statutory phrase, "intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, etc. . . . stolen retail merchandise," indicate that the statute requires proof of some activity distinct from the conduct inherent in shoplifting itself—that is, does the statute require proof of something more than the mere continued possession of stolen retail merchandise during an attempt to leave the store following the simple act of shoplifting? An examination of the ordinary meanings of the statutory terms is unhelpful in resolving this

by altering the dollar amounts in subsection (c) that determine the level of the offense. *See id.* § 31.16(c)(1)-(c)(7) (providing for offense level ranging from Class C misdemeanor to first-degree felony depending on total value of retail merchandise involved in the activity). Because the statutory amendments do not affect our analysis of appellant's sufficiency challenge, we cite to the current version of the statute.

dispute because the definitions for those terms might reasonably support either interpretation.[5]  Because both views of the statutory language are plausible ones, we must consult extra-textual considerations to discern the Legislature's intent for the meaning of the statute.  *See Boykin*, 818 S.W.2d at 785-86.

### C.  Analysis of Extra-Textual Factors

In evaluating ambiguous statutory language in light of extra-textual considerations, we may consider, among other matters, the object sought to be attained by the Legislature; the circumstances under which the statute was enacted; and the legislative history. *See* TEX. GOV'T CODE § 311.023; *Arteaga*, 521 S.W.3d at 334.  Our analysis of the legislative history below encompasses all of these considerations and shows that this statute was not intended to criminalize every act of ordinary shoplifting, but was instead intended to target professional crime rings involved in the large-scale theft and reselling of stolen retail merchandise.

As of the time of its original enactment in 2007, the legislative history shows that the

---

[5]

- Conducts: "to have the direction of; run, manage, direct"; "treat, handle, execute"; "to direct as a leader the performance or execution of"; WEBSTER'S NEW INTERNATIONAL DICTIONARY 474 (3d ed. 2002).
- Promotes: "to contribute to the growth, enlargement, or prosperity of; further, encourage"; "to bring or help to bring into being, launch." *Id*. at 1815.
- Facilitates: "to make easier or less difficult: [to] free from difficulty or impediment." *Id.* at 812.
- Activity: "the quality or state of being active"; "an occupation, pursuit, or recreation in which a person is active." *Id.* at 22.  "Active," in turn, may mean "engaged in an action or activity, participating"; "having practical operation or results; effective"; "marked by present operation, transaction, movement, or use." *Id.*

organized retail theft statute was intended to reach conduct distinct from that of an ordinary shoplifter acting alone. The House Criminal Jurisprudence Committee Bill Analysis for House Bill 3584 stated,

> Organized retail crime is distinct from petty shoplifting in that it involves professional theft rings that move quickly from community to community and across county lines to steal large amounts of merchandise. This criminal activity requires many thieves (boosters) organized by a central figure (fence) that pays the boosters pennies on the dollar, then repackages and resells the merchandise through alternate distribution channels to the general public.

Bill Analysis, House Criminal Jurisprudence Committee, H.B. 3584, 80th Leg., R.S. (2007). The corresponding Senate Research Center report similarly stated, "Organized retail theft is a highly organized criminal activity that depends on many thieves organized by a central 'fence' who collects the stolen merchandise and then resells it to the general public." Bill Analysis, Senate Research Center, H.B. 3584, 80th Leg., R.S. (2007). These sources suggest that the Legislature's primary concern in enacting the statute was on targeting organized retail theft crimes, as well as the post-theft transfer and reselling of retail goods by such groups, rather than a concern for the conduct of petty shoplifters acting alone.

Subsequent legislative history from the 2011 amendments to the statute also support this understanding of the legislative intent underlying the statute. The Senate Research Center bill analysis for the amendments echoed the original legislative intent by noting that organized retail crime "is the orchestrated scheme to convert stolen goods to cash. It can generally be described as professional burglars, boosters, cons, thieves, fences and resellers conspiring to steal and sell retail merchandise obtained from retail establishments by theft

or deception." Senate Research Center, Bill Analysis, H.B. 2482, 82nd Leg., R.S. (2011). The bill analysis continued, "H.B. 2482 targets the patterns of these crimes committed by corrupt enterprises by allowing the major players and ring leaders to be held accountable. This bill makes it a crime to receive the stolen goods; intentionally conduct, promote, or facilitate the corrupt activity; or be employed by or associated with the enterprise by engaging in the activity." *Id.*

The legislative history suggests that the purpose of the 2011 amendments was not to ensnare the conduct of petty shoplifters, but was instead to "impose stronger punishment and penalties on these large-scale organized retail thefts because they lead to retail business losses and closings, the loss of jobs, and the loss of sales tax revenue, which in turn will have a devastating effect on Texas' economy." House Criminal Jurisprudence Committee Report (Substituted), C.S.H.B. 2482, 82nd Leg., R.S. (2011).

The legislative history from 2011 further reveals that the amendment's removal of the $1,500 minimum value threshold for this statute and the lowering of the overall value amounts that determine the range of punishment were intended to provide greater distinction between ordinary theft and organized retail theft. The House Research Organization noted that supporters of the legislation had made the following assertions:

> Creating misdemeanor charges for organized retail theft under $500 and lowering the value ladder on all felony charges would provide the stiffer penalties that are warranted for this crime. Prosecutors currently do not use the organized retail theft statute frequently because the penalties are the same as for general theft.

The con artists who commit this crime are very aware of the current $1,500 threshold for organized retail theft and adroitly stay just beneath it, knowing that if they get caught they will get the equivalent of a traffic ticket and can keep stealing. These criminals consider this a low-risk and high-reward crime; they often steal $10,000 to $20,000 worth of merchandise in a single day. Making the penalties steeper would deter them from committing this serious crime. . . .

House Research Organization, Bill Analysis, H.B. 2482, 82nd Leg., R.S. (2011).

Considering this clear legislative history in conjunction with the ambiguous statutory language described above, we conclude that it supports the view that the organized retail theft statute was not intended to apply to the conduct of an ordinary shoplifter acting alone. The legislative history indicates that the crime of organized retail theft was intended to be distinct from "petty shoplifting" and that the statute was enacted for the purpose of targeting professional theft rings involved in the large-scale theft, transfer, repackaging, and reselling of stolen retail merchandise. Frequently, the targeted activity would involve coordinated effort by multiple individuals.[6] Nothing about the legislative history signals that this statute

---

[6]  Appellant presents a number of arguments in her brief asserting that, in light of the legislative history, the statute should be construed to require proof of a collaborative or group effort. The court of appeals expressly rejected this argument, noting that the statute's language does not contain any such express requirement. *See Lang*, 2017 WL 1833477, at *6.  We conclude that we need not definitively resolve whether the statute would require proof of collaborative or group activity at this juncture because we can resolve appellant's complaint on the more straightforward basis that the statute does not cover ordinary shoplifting by a single actor.  We leave for another day the more precise contours of what types of activities are covered by the statute, including whether the statute requires a showing of group effort.  Contrary to the suggestion by the dissenting opinion, nothing in this opinion should be interpreted as holding that the statute requires proof of collaborative or group effort to support a conviction.  We are not reaching that question and limit our holding today to concluding that the conduct of a solitary shoplifter who steals retail items and then attempts to leave the store with those items does not establish the offense of organized retail theft.

was intended to broadly apply to all people who commit ordinary shoplifting of retail merchandise. Accordingly, we conclude that the proper interpretation of the statutory phrase "intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of stolen retail merchandise," requires proof of conducting, promoting, or facilitating some activity distinct from the mere activity inherent in the ordinary shoplifting of retail items by a single actor. *See* TEX. PENAL CODE § 31.16(b)(1).

In view of these considerations, we hold that the court of appeals erred by concluding that the organized retail theft statute plainly permits appellant's conviction under these circumstances. Based on the foregoing analysis, we conclude that appellant's conduct in stealing items from HEB and then attempting to leave the store with those items does not establish that she intentionally conducted, promoted, or facilitated an activity in which she received, possessed, concealed, stored, bartered, sold, or disposed of stolen retail merchandise. *See id*. As we have explained above, the statute requires proof of some activity undertaken with respect to stolen retail merchandise that goes beyond the conduct inherent in ordinary shoplifting. The record here fails to include any such proof. We hold that the evidence is insufficient to support appellant's conviction for organized retail theft, and we therefore sustain her second and third grounds for review challenging the court of appeals's sufficiency analysis.

**D. Remaining Issues**

Having determined that the evidence is legally insufficient to support appellant's conviction, we need not reach her first ground in her petition for discretionary review. In that ground, appellant contends that this Court should abandon the rule that prohibits consideration of extra-textual sources except in the event of an ambiguity in the statutory language or an absurd result that the Legislature could not possibly have intended. *See Boykin,* 818 S.W.2d at 785. Given our resolution of the other grounds in appellant's favor, we find it unnecessary to revisit our precedent in this area at this juncture, and we will not consider appellant's arguments with respect to this issue.

The question remains of what remedy is proper under these circumstances. In this case, appellant has conceded that the evidence is sufficient to show that she committed conduct that would amount to theft. *See* TEX. PENAL CODE § 31.03(a). This Court has held that, when the evidence is deemed legally insufficient to support a person's conviction for a greater offense, but the analysis as to insufficiency raises the possibility that the record establishes the person is nevertheless guilty of some lesser-included offense, the appellate court should consider reforming the judgment to a lesser-included offense before rendering a judgment of acquittal. *See Thornton v. State*, 425 S.W.3d 289, 299-300 (Tex. Crim. App. 2014). The parties have not briefed this issue in this Court, and we decline to address this question in the first instance. Accordingly, we remand the case to the court of appeals for it to consider this matter with the benefit of briefing from the parties.

### III. Conclusion

Based on our conclusion that the evidence is legally insufficient to support appellant's conviction for the offense of organized retail theft, we reverse the judgment of the court of appeals upholding her conviction. We remand this case to the court of appeals for it to consider whether the judgment of conviction should be reformed to any lesser included offense.

Delivered: November 21, 2018
Publish