

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00186-CR

———————————————

BRYSON MEAD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the County Court at Law
Hood County, Texas
Trial Court No. 54146

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I.  Introduction

In two issues, Appellant Bryson Mead challenges his misdemeanor conviction for failing to report a collision with a structure, fixture, or landscaping adjacent to a highway, for which he was sentenced to pay a $750 fine and to serve 120 days' confinement, probated for nine months.  He argues (1) that the evidence is insufficient to support his conviction because the alleged offense occurred on a privately maintained road and (2) that Transportation Code Section 550.041 does not expand the authority of officers to arrest for traffic offenses occurring on privately maintained roads but merely expands the authority of officers to investigate accidents on private property.  The specific statute creating a duty to report a collision (Section 550.025) applies only to collisions with items adjacent to a highway, which is statutorily defined as a publicly maintained way.  That statute does not criminalize Appellant's conduct because he collided with items adjacent to a privately maintained road.  The State argues that even though Appellant's failure to report was not criminalized by the statute under which he was charged, the scope of that statute is broadened by Section 550.041 that allows a law-enforcement officer to file "justifiable charges."  In essence, the State argues that an officer may legislate a crime into existence after the conduct has occurred and when no other legislative enactment criminalizes the conduct.  The statutory language cited by the State unambiguously

does not support such an unorthodox interpretation. Accordingly, we reverse and render a judgment of acquittal.

## II. Factual and Procedural Background

The facts established at the bench trial are essentially undisputed. The incident occurred in the Pecan Plantation subdivision in Hood County. The roads in the subdivision are privately owned and maintained.

On one of the subdivision's roads, a driver drove his vehicle through a residence's yard and did over $1,000 damage to landscaping and a flagpole. The sound of the collision brought neighbors outside; they saw a clattering car driving from the scene. One of the neighbors called the nonemergency number for the Hood County Sheriff's Department, and a deputy was dispatched. The presence at the scene of a license plate from the vehicle that ran through the yard simplified the deputy's task of identifying that vehicle's registered owner.

It took the deputy approximately forty-five minutes after arriving at the scene of the incident to drive to the registered owner's address. The deputy saw a vehicle parked at the address with substantial damage to its rear end and noted that the vehicle was missing its rear bumper, which presumably included its rear license plate. The deputy knocked at the door of the residence, and Appellant's father answered and then asked what Appellant had hit. At this point, neither Appellant nor the injured party had reported the incident to security for the subdivision or to the

3

sheriff's department. The deputy eventually arrested Appellant for striking a structure and landscaping but failing to report the collision.

The record of the trial of this matter established the facts recited above but primarily focused on whether Appellant had committed any criminal offense by not reporting a collision with items adjacent to a privately maintained road. We will detail this controversy below.[1]

The trial court found Appellant guilty and imposed the sentence referenced in this opinion's introduction. Appellant filed a notice of appeal.

### III. Analysis

#### A.    We set forth the standard of review.

As noted, no one disputes what the record establishes with respect to Appellant's conduct; instead, the question is whether that conduct establishes a violation of the law. Thus, our sufficiency review is a variation of what we usually apply and is based on a determination of whether Appellant's conduct falls within the applicable penal provision. The Texas Court of Criminal Appeals has articulated this distinction as follows:

> It is axiomatic that, in gauging the legal sufficiency of the evidence to support a particular criminal conviction, reviewing courts are obliged to view all of the evidence in the light most favorable to the jury's verdict, in deference to the jury's institutional prerogative to resolve all contested issues of fact and credibility. *But sometimes appellate review of legal sufficiency*

---

[1]Appellant also filed a motion to suppress his warrantless arrest. The trial court denied that motion. Appellant raises no appellate issue regarding the denial of the motion to suppress.

4

*involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law.*

*Delay v. State*, 465 S.W.3d 232, 235 (Tex. Crim. App. 2014) (emphasis added) (footnotes omitted); *see also Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018) (determining whether undisputed evidence of appellant's conduct constituted a violation of the organized retail theft statute). Determining the reach of a penal provision involves a question of statutory construction that "is a question of law that we review de novo." *Lang*, 561 S.W.3d at 180.

**B.     We set forth the principles of statutory construction that we apply.**

The task of deciding whether Appellant's conduct violates a penal provision involves the construction of two sections of the Transportation Code. The guiding principles of interpretation that we apply when a statute is not ambiguous are as follows:

> When we interpret statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. In doing so, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment. We follow this principle because (1) the text of the statute is the law; (2) the text is the only definitive evidence of what the legislators had in mind when the statute was enacted into law; and (3) the [Texas] Legislature is constitutionally entitled to expect that the [j]udiciary will faithfully follow the specific text that was adopted. Our duty is to try to interpret the work of our Legislature as best we can to fully effectuate the goals they set out. Legislative intent isn't the law, but discerning legislative intent isn't the end goal, either. The end goal is interpreting the text of the statute.

In interpreting the text of the statute, we must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize text and avoid conflicts. Time-honored canons of interpretation, both semantic and contextual, can aid interpretation, provided the canons esteem textual interpretation.

Moreover, we read words and phrases in context and construe them according to rules of grammar. When a particular term is not legislatively defined but has acquired a technical meaning, we construe that term in its technical sense. When it has not, we construe that term according to common usage. We may consult standard or legal dictionaries to determine the meaning of undefined terms.

*State v. Hardin*, 664 S.W.3d 867, 872–73 (Tex. Crim. App. 2022) (footnotes and internal quotations omitted).

Only under limited circumstances may we step outside the text of a statute to interpret it. We may turn to "extra-textual factors" only "if a statute's language is ambiguous[] or if application of the statute's plain meaning would lead to an absurd result that the [Texas] Legislature could not possibly have intended." *Lang*, 561 S.W.3d at 180. Whether a statute is ambiguous turns on whether it "may be understood by reasonably well-informed persons in two or more different senses." *Id.* (quoting *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012)).[2]

---

[2]Should we conclude that a statute is ambiguous, we may consult extra-textual factors that include the following:

(1) the object sought to be attained by the [Texas] Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular

6

**C.** **We explain why we conclude that the statutory provisions at issue did not criminalize Appellant's conduct.**

The State attempts to blend two ingredients—two provisions of the Transportation Code—to criminalize Appellant's conduct. Those ingredients do not gel. The first provision is a statute that makes it a crime for an operator of a vehicle to fail to notify the owner of "a structure adjacent to a highway or a fixture or landscaping legally on or adjacent to a highway" of a collision that damaged any of those items. Tex. Transp. Code Ann. § 550.025(a).[3] The face of this statute does not apply to Appellant's conduct because the structures, fixtures, and landscaping with which Appellant collided were adjacent not to a highway but to a privately maintained road within the Pecan Plantation subdivision. The second provision is Section 550.041 of the Transportation Code. Subsection (a) of that section allows an officer to file "justifiable charges relating to the collision without regard to whether the collision occurred on property to which [Chapter 550] applies." *Id.* § 550.041(a). The State's argument is that this language empowers an officer to legislate a crime that he or she believes is justified. Such a reading ignores the context in which the language is

---

construction; (6) the administrative construction of the statute; and (7) the title or caption, preamble, and any emergency provision.

*Lang*, 561 S.W.3d at 180 (citing Tex. Gov't Code Ann. § 311.023).

[3]The current version of Section 550.025, effective on September 1, 2023, replaces the word "accident" with "collision." *See* Act of May 24, 2023, 88th Leg., R.S., ch. 709, § 49, 2023 Tex. Sess. Law Serv. ___, ___ (codified at Tex. Transp. Code § 550.025). We use the word "collision" in this opinion, and whether "collision" or "accident" is used makes no difference to our analysis.

7

used; fails to apply the fair, objective meaning of Section 550.041(a)'s words; and argues for an interpretation that is constitutionally infirm. The language—unambiguously—does not vest a law-enforcement officer with such an unheard-of power.

**D.** **Appellant's conduct did not violate Section 550.025 of the Transportation Code because he collided with nothing adjacent to a highway.**

In his first issue, Appellant argues that the evidence is insufficient to establish that he violated Section 550.025 of the Transportation Code. Again, that section imposes a duty to notify an owner of property only of a collision with a structure, fixture, or landscaping adjacent to a highway. We agree that Appellant collided with such items adjacent to a privately maintained road, and thus Section 550.025 imposed no duty on him to report the collision that occurred.

The only statute cited by the parties that specifically deals with the duty to report a collision with a structure, fixture, or landscaping is Section 550.025, which provides as follows:

> (a) The operator of a vehicle involved in a collision resulting only in damage to a structure *adjacent to a highway* or a fixture or landscaping legally on or *adjacent to a highway* shall:
>
> > (1) take reasonable steps to locate and notify the owner or person in charge of the property of the collision and of the operator's name and address and the registration number of the vehicle the operator was driving; and
> >
> > (2) if requested and available, show the operator's driver's license to the owner or person in charge of the property.

8

*Id.* § 550.025(a) (emphases added). Section 550.001 of the Transportation Code states that Chapter 550 applies only to "highway[s] or other public places." *Id.* § 550.001(3).[4]

In turn, Section 550.025 is found in Title 7, Subtitle C of the Transportation Code. That subtitle contains a specific definition of "highway": "'Highway or street' means the width between the boundary lines of a *publicly maintained* way any part of which is open to the public for vehicular travel." *Id.* § 541.302(5) (emphasis added).

Thus, the duty to locate and notify a structure, fixture, or landscaping owner of a collision applies only if such structure, fixture, or landscaping was "legally on or adjacent to a highway," and "highway" is defined as "a publicly maintained way." *Id.* §§ 541.302(5), 550.025. Everyone agrees that the subdivision street on which Appellant was driving when he collided with the landscaping and flagpole was a privately maintained road within the Pecan Plantation subdivision and did not fall within the definition of "highway" because it was not publicly maintained. This construction is also reflected in the trial court's conclusion and findings.[5] Because the

---

[4]The chapter also applies to other areas not relevant to the question before us, such as (1) "a road owned and controlled by a water control and improvement district" and (2) "a private access way or parking area provided for a client or patron by a business, other than a private residential property, or the property of a garage or parking lot for which a charge is made for storing or parking a motor vehicle." Tex. Transp. Code Ann. § 550.001(1), (2).

[5]The trial court's findings and conclusions note the following:

9

items struck fell outside the ambit of Section 550.025, that section imposed no duty on Appellant to locate and notify the owner of the items damaged during the collision. We sustain his first issue.

**E.  Section 550.041 cannot be read to create a criminal offense for failure to report a collision with a structure, fixture, or landscaping adjacent to a privately maintained road.**

In his second issue, Appellant contends that Transportation Code Section 550.041 also does not criminalize his conduct. Again, we agree. As we have noted, the State tries to sidestep the fact that Section 550.025 does not create a duty to report a collision with a structure, fixture, or landscaping adjacent to a privately maintained road by arguing that Section 550.041 empowers a law-enforcement officer to create a criminal offense for failure to report such a collision. In other words, the State argues that Section 550.041 empowers a law-enforcement officer to criminalize conduct that

---

[Finding of fact] 3. 10305 Ravenswood Rd. is located inside Pecan Plantation. Pecan Plantation is a gated community with limited public access. All roads inside Pecan Plantation are privately owned and maintained by the Pecan Plantation Owners' Association.

. . . .

[Conclusion of law] 1. Tex. Transp. Code § 550.025 involves damage to a structure, fixture, or landscaping "on or adjacent to a highway."

[Conclusion of law] 2.  For the purposes of Tex. Transp. Code § 550.025, a "highway" is defined as "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel." Tex. Transp. Code § 541.302(5).

10

is not criminalized by a specific statutory provision.[6] On its face, such a statement makes the State's argument dubious. Beyond that, the language of the section itself and the implications of the State's construction do not support so dubious a proposition.

> **1. Section 550.041 within the context of the structure of Chapter 550 of the Transportation Code demonstrates that it deals with the power of peace officers to investigate collisions, not the power to create criminal offenses for collisions not described in the chapter.**

As we have noted when outlining the principles that we use to interpret a statute, context is a central concern not only of the words within a provision but also of the provision itself because we look at other statutory provisions as well to harmonize text and avoid conflicts. *Hardin*, 664 S.W.3d at 872–73. Thus, we begin our analysis with the context of Section 550.041 in the scheme of the chapter of the

---

[6]Though it is not completely clear, it appears that the trial court adopted the State's theory by noting the following in its conclusions:

> 3. Law enforcement generally has no authority to enforce offenses relating to the operation of vehicles on private roads unless the statute expressly provides for enforcement. Tex. Att'y Gen. Op. JC-0016 (1999); *State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 200[4], pet. ref'd).

> 4. Tex. Transp. Code § 550.041 authorizes peace officers to investigate motor[-]vehicle accidents with property damage appearing to be $1,000 or more "without regard to whether the accident occurred on property to which this chapter applies." Such property would include accidents on privately maintained roads. *See also Alonzo v. State*, 251 S.W.3d 203, 208 (Tex. App.—Austin 2008[, pet. ref'd]).

Transportation Code in which it is found. Within that context, it is reasonable to read Section 550.041 as functioning to avoid a potential ambiguity in Chapter 550 and ensuring that peace officers have the power to investigate collisions for which they are obligated to make reports under the chapter of the Transportation Code at issue. It is not reasonable to read it as empowering an officer to conjure up an offense.

Chapter 550 is titled "Collisions and Collision Reports." Though a section heading is not an interpretive tool for an unambiguous statute, the heading of Chapter 550 signals the two primary topics covered by the chapter.[7]

The chapter begins by defining its reach, explicitly providing that the duties it creates apply only in limited geographic areas:

> This chapter applies only to[] (1) a road owned and controlled by a water control and improvement district; (2) a private access way or parking area provided for a client or patron by a business, other than a private residential property, or the property of a garage or parking lot for which a charge is made for storing or parking a motor vehicle; and (3) a highway or other public place.

Tex. Transp. Code Ann. § 550.001.

The chapter then deals with its first topic of collisions by its Subchapter B titled "Duties Following Collision." The six sections of this subtitle address the duties of "the operator of a vehicle" in a host of different types of collisions and establish the penalty for a failure to meet the imposed duty. *Id.* §§ 550.021 ("Collision Involving

---

[7]We do not assign weight to the title of a statute as it is only an aid to interpretation if the statute is ambiguous. *See State v. Kahookele*, 640 S.W.3d 221, 225 (Tex. Crim. App. 2021) (citing Tex. Gov't Code Ann. § 311.024 and stating that "[t]itles or section headings do not limit or expand the meaning of a statute").

Personal Injury or Death"); .022 ("Collision Involving Damage to Vehicle"), .023 ("Duty to Give Information and Render Aid"); .024 ("Duty on Striking Unattended Vehicle"); .025 ("Duty on Striking Structure, Fixture, or Highway Landscaping"); .026 ("Immediate Report of Collision").

Chapter 550 next has the provision that is the focus of this appeal—Section 550.041 that comprises the Chapter's Subchapter C. This section vests "peace officers" with the ability to investigate collisions even though those collisions do not occur in the circumstances specified in Subchapter B or in the limited geographic locations to which Chapter 550 expressly applies by virtue of its Subchapter A. Section 550.041 provides,

> (a) A peace officer who is notified of a motor[-]vehicle collision resulting in injury to or death of a person or property damage to an apparent extent of at least $1,000 may investigate the collision and file justifiable charges relating to the collision without regard to whether the collision occurred on property to which this chapter applies.
>
> (b) This section does not apply to:
>
>> (1) a privately owned residential parking area; or
>
>> (2) a privately owned parking lot where a fee is charged for parking or storing a vehicle.

*Id.* § 550.041.

In its Subchapter D titled "Written Collision Report," the chapter deals with the second topic embraced by its title. This subchapter addresses a host of topics associated with collision reports prepared by a law-enforcement officer. An officer

13

must make a report when the same criteria empowering him or her to investigate under Section 550.041 exist, i.e., "[a] law[-]enforcement officer who in the regular course of duty investigates a motor[-]vehicle collision *shall make a written report of the collision if the collision resulted in injury to or the death of a person or damage to the property of any one person to the apparent extent of $1,000 or more.*" *Id.* § 550.062(a) (emphasis added). Subchapter D also deals with such topics as the requirement that the report be submitted on the appropriate form, the obligation of the Texas Department of Transportation to promulgate the form of the report, to whom information contained on the form may be released, what statements in the form are admissible, the right of a municipality to require certain collision reports, and how a report may be changed. *Id.* §§ 550.062, .063, .064, .065, .066, .067, .068.[8]

Thus, the structure of Chapter 550 and the context of Section 550.041 within it reveal the following. The chapter applies to certain limited geographic locations and imposes duties on the operator of a vehicle for certain types of collisions. In turn, Section 550.041 empowers officers to investigate collisions even though they do not fall within the chapter's geographic limitations or the particular criteria of collisions embraced by Subchapter B and the duties imposed after certain types of collisions occur.

---

[8]In its final Subchapter E, Chapter 550 also requires a report by a medical examiner or justice of the peace for a collision that results in a death. *See id.* § 550.081.

14

The purpose of Section 550.041 is obvious because it empowers officers to investigate exactly the types of collisions for which the officers are required to make a written report. Section 550.041 serves to obviate the potential ambiguity that might be created if there were no clarification that the power to investigate was not limited by the geographic limitations specified in the chapter or by the specific types of collisions that the chapter makes it a crime not to report. In other words, Section 550.041 reinforces that an officer has the power to investigate the types of accidents for which a report must be made and that the power to investigate to make the needed report is not limited to those types of collisions specifically addressed by the chapter or its geographic limitations. Placed in this context, a reasonable interpretation of Section 550.041 is that it defines and clarifies an officer's investigative powers and does not empower an officer to criminalize a failure to report a collision in circumstances outside those specifically defined in Subchapter B. This context collapses an argument that Section 550.041 empowers an officer to conjure up a criminal act for the failure to report the types of collisions that fall outside those described in Subchapter B.

  **2.**   **Section 550.041's fair, objective language does not empower a peace officer to create a criminal offense.**

Nor do we conclude that a fair, objective reading of the language of Section 550.041 supports an interpretation that it creates a criminal offense. Again, the language in Section 550.041 at issue states that

15

[a] peace officer who is notified of a motor[-]vehicle collision resulting in injury to or death of a person or property damage to an apparent extent of at least $1,000 *may investigate the collision and file justifiable charges relating to the collision without regard to whether the collision occurred on property to which this chapter applies.*

*Id.* § 550.041(a) (emphasis added).

As noted, we interpret a statute based on its fair, objective language and the use of its words in context. *See Hardin*, 664 S.W.3d at 872–73. The use of the word "charges" indicates the existence of a criminal offense. A criminal offense in Texas requires more than an officer's belief that he or she is justified in deeming conduct to be criminal. Specifically, according to Black's Law Dictionary, "charge" means "[t]o accuse (a person) *of an offense* <the police charged him with murder>." *Charge*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see Hardin*, 664 S.W.3d at 872–73 (permitting the use of legal dictionaries to determine the meaning of undefined terms). And in Texas, for an offense to exist, there must be a legislative provision making it a criminal act. As the Penal Code notes, "Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." Tex. Penal Code Ann. § 1.03(a). All agree; no legislative enactment criminalizes Appellant's conduct.

Nor does the presence of the word "justifiable" function to give an officer the ability to create a criminal offense not found in a legislative enactment. Black's Law Dictionary defines "justifiable" as "[l]egally or morally acceptable for one or more

16

good reasons; excusable; defensible." *Justifiable*, Black's Law Dictionary (11th ed. 2019). It is common sense to read the word "justifiable" in its statutory context as meaning an existing criminal offense that is justifiably charged—or in Black's words "legally . . . acceptable"—rather than as empowering an officer to broaden the scope of an offense to cover a circumstance not embraced by the words of the statute defining the offense.

Here, the State does not argue that any statutory provision or ordinance makes it an offense to fail to report a collision with a structure, fixture, or landscaping adjoining a privately maintained road. Instead, the State argues that the ability of an officer to file "justifiable charges" allows the officer to expand the reach of an existing offense under Section 550.025 into an area not embraced by the statute. But the fair, objective meaning of the words "justifiable charges" refers to an existing criminal offense—not one that an officer might subjectively create and view as justified after the conduct occurred. Here, there is no legislative enactment making Appellant's conduct an offense, i.e., there is no "justifiable charge" in existence that an officer could file for the failure to report a collision with a structure, fixture, or landscaping adjoining a privately maintained road.

Nor is it reasonable to vest an officer with the ability to create a crime simply because justifiable charges may be filed "relating to the collision without regard to whether the collision occurred on property to which this chapter applies." Tex. Transp. Code Ann. § 550.041(a). As we have noted, placing this language in context

17

explains its purpose: an officer's ability to investigate is not restricted by the geographic limitations of Chapter 550 or the types of collisions for which it imposes a duty to report.

Thus, we conclude that a fair, objective reading of the language of Section 550.041 does not support an interpretation that an officer can charge a crime that is of his or her own conception and that is not found in a legislative enactment.

### 3. To interpret Section 550.041 to allow a peace officer to create a criminal offense would violate principles of due process.

The State's view that Section 550.041 allows an officer to make a subjective determination that there is a duty to report a collision even though that duty is not embodied in a statute creates an obvious due-process concern. To meet standards of due process, a statute criminalizing conduct must give notice of what conduct is prohibited. A crime created from an officer's view of what "justifiable charges" should be after the conduct has occurred and when no legislative enactment criminalizes that conduct fails to meet the due-process standard.

The Court of Criminal Appeals has explained that "[t]o pass constitutional muster, a law that imposes criminal liability must be sufficiently clear (1) to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) to establish determinate guidelines for law enforcement." *State v. Doyal*, 589 S.W.3d 136, 146 (Tex. Crim. App. 2019). "[T]he 'indeterminacy of precisely what' the prohibited conduct is" renders a statute vague. *Id.* & n.42 (quoting *United States v.*

18

*Williams*, 553 U.S. 285, 306, 128 S. Ct. 1830, 1846 (2008)). A statute that is vague transgresses the guaranty of due process; as the Beaumont Court of Appeals has noted,

> [T]he prohibition against vagueness in criminal statutes is fundamental to due process under the United States Constitution. *Sessions v. Dimaya*, [584] U.S. [148, 155], 138 S. Ct. 1204, 1212[] . . . (2018). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Id.* ([citing] *Papachristou v.* [*City of*] *Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, [843] (1972)).

*Latimer v. State*, 659 S.W.3d 135, 143 (Tex. App.—Beaumont 2022, no pet.).

No statute gives notice that there is a duty to report a collision with a structure, fixture, or landscaping adjacent to a privately maintained road. Instead, the State argues that an officer's subjective determination that such a charge is justified creates an offense because Section 550.041 goes on to say that the officer may make this determination "without regard to whether the collision occurred on property to which this chapter applies." *See* Tex. Transp. Code Ann. § 550.041(a). Thus, until the officer makes this determination after the conduct occurs, a citizen does not know it is a crime to not report the collision. It is unexplained how an officer's post hoc determination that a report should be made meets constitutional muster either by giving a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited or by establishing determinate guidelines for law enforcement to follow.

19

We must presume that the legislature adopted a statute in compliance with constitutional requirements. *See* Tex. Gov't Code Ann. § 311.021(1) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended . . . ."). Further, "[t]he Texas Supreme Court and the Texas Court of Criminal Appeals have cautioned that if one reasonable interpretation of a statute yields absurd results while the other interpretation yields no such absurdities, the latter interpretation is preferred." *In re Commitment of Adams*, No. 05-22-00085-CV, 2023 WL 1228835, at *5 (Tex. App.—Dallas Jan. 31, 2023, pet. denied) (mem. op.) (first citing *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 667 (Tex. 2015); and then citing *Griffith v. State*, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003)). Thus, we will not adopt an interpretation that creates a conspicuous violation of due process or that leads to the absurd result by predicating a criminal offense solely on an officer's subjective post hoc view that the conduct committed constitutes a criminal offense.

We sustain Appellant's second issue.

## IV. Conclusion

At bottom, we conclude that Section 550.041 is not ambiguous. Nothing in its unambiguous language allows a law-enforcement officer to decide after the fact that a crime can be charged when no legislative enactment criminalizes that conduct.[9] Thus, because Appellant had no duty under Section 550.025 to report a collision with a

---

[9]Because we conclude that the language of Section 550.041 is unambiguous, we will not examine the "extra-textual factors" used to decide the meaning of an ambiguous statute. *See Lang*, 561 S.W.3d at 180.

structure, fixture, or landscaping adjoining a privately maintained road, he committed no criminal act when he failed to report the collision with those items adjoining a privately maintained road in Pecan Plantation.

Having sustained Appellant's first and second issues, we reverse the trial court's judgment and render a judgment of acquittal.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 18, 2024