

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0881-20

### CRYSTAL MASON, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

SLAUGHTER, J., filed a dissenting opinion.

### DISSENTING OPINION

The Court's opinion readily acknowledges that the statute at issue here, Election Code Section 64.012, is unambiguous. Yet, it then goes on to analyze the "proper interpretation" of the statute's *mens rea*—not by simply applying the statute's plain language as it should, but instead by using extratextual sources, including an inapplicable

opinion from this Court in which we had to analyze an *ambiguous* statute. In doing so, the opinion confuses the issues and lends itself to a potentially improper interpretation and application of the statute. Moreover, the Court chooses to unnecessarily remand this case to the court of appeals for a sufficiency review when the proper outcome is clear. I would instead, in the name of judicial economy, resolve the case here on the largely uncontested record and hold that the evidence is sufficient. Because the Court does not, I respectfully dissent.

## I.      Analysis

### A.      Contrary to the language in the Court's opinion suggesting otherwise, the illegal-voting statute merely requires knowledge of ineligibility to vote and allows the fact-finder to reasonably infer the defendant's subjective knowledge based on the evidence.

Under the plain language of Election Code Section 64.012(a)(1), a person is guilty of illegal voting if she "votes or attempts to vote in an election in which the person knows the person is not eligible to vote." TEX. ELEC. CODE § 64.012(a)(1). The statute's culpable mental state requirement is explicit and unambiguous—the State must prove that the defendant subjectively knew that her status as a felon rendered her ineligible to vote.

Because the statute is unambiguous, the Court's analysis of the statute's *mens rea* requirement should end there. When a statute is unambiguous it is unnecessary to look beyond the statutory text for guidance, unless the statute's plain meaning would lead to absurd results. *See Baird v. State*, 398 S.W.3d 220, 228 (Tex. Crim. App. 2013). Rather than apply this legal tenet, the Court instead relies heavily on the reasoning in our *DeLay* opinion to support its statutory interpretation. *See DeLay v. State*, 465 S.W.3d 232 (Tex. Crim. App. 2014). But *DeLay* is distinguishable and has no application here.

In *DeLay*, this Court had occasion to interpret a different Election Code provision, Section 253.003(a), which provides that a person commits an offense if he "knowingly make[s] a political contribution in violation of this Chapter." TEX. ELEC. CODE § 253.003(a). The Court there reasoned that it was unclear "how far down the sentence the word 'knowingly' is intended to travel." *Delay*, 465 S.W.3d at 250. In resolving this ambiguity, the Court concluded that the Legislature intended that the defendant must have knowledge as to the circumstance that made the conduct illegal and also as to the fact that the conduct was in violation of the Election Code. *Id.* (holding that the State must show that the actor was "aware, not just of the particular circumstances that render his otherwise-innocuous conduct unlawful, but also of the fact that undertaking the conduct under those circumstances in fact constitutes a 'violation of' the Election Code"). This holding was based in part on our precedent in *McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989), in which we held that, "in the face of a statute that is ambiguous with respect to the extent of the *mens rea* requirement, we have resolved the ambiguity in favor of applying 'some form of culpability . . . to those conduct elements which make the overall conduct criminal.'" *DeLay*, 465 S.W.3d at 247 (quoting *McQueen*, 781 S.W.2d at 604). *DeLay* was also based on the notion that provisions outside the Penal Code must be interpreted in accordance with the Rule of Lenity, requiring "'that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Id.* at 251 (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985)). Thus, our reasoning and interpretation in *DeLay* was rooted in the ambiguity of the statute under consideration.

In contrast, the statute at issue in this case is not ambiguous. As such, the principles we applied to interpret the ambiguous statute in *DeLay* do not apply here.[1] We need not "construe" or "interpret" anything. Therefore, citing *DeLay* in support of the Court's holding suggests that it is proper to go beyond the plain statutory language in interpreting an unambiguous provision. This, in turn, presents the potential for confusion and misinterpretation of our precedent in future cases.

I also note that the Court at times appears to conflate the *mens rea* requirements in *DeLay* with the *mens rea* requirement at issue here. But, there is a key difference between the two statutes. In *DeLay*, this Court held that the State was required to prove that the defendant actually knew the conduct in question violated the Election Code. In this case, however, Section 64.012 requires only that the Appellant knew she was ineligible to vote. It does not require her to know that voting while ineligible violates the Election Code. *Compare DeLay*, 465 S.W.3d at 250 (State must prove awareness "of the fact that undertaking the conduct under those circumstances in fact constitutes a 'violation of' the Election Code"), *with* TEX. ELEC. CODE § 64.012(a)(1) (providing that a person commits an offense if she votes and knows she "is not eligible to vote"). This distinction likely makes little difference in most cases, but I can envision a scenario in which a defendant claims that she knew she was ineligible to vote but did not realize that voting under those circumstances would constitute a criminal-law violation. Therefore, if the Court is going

---

[1] The *McQueen/DeLay* line of cases applies only where the Court must resolve an ambiguity with respect to how the culpable mental state applies. In cases where a particular circumstance would render otherwise innocent conduct criminal, we have held that a culpable mental state must apply to that circumstance. But here, the statute already expressly requires a culpable mental state (knowing) as to the circumstance that renders the otherwise innocent conduct (voting) criminal—that is, the lack of eligibility. *See* TEX. ELEC. CODE § 64.012(a)(1).

to rely on *DeLay*, then it should at least clarify that the culpable mental state requirement imposed in *DeLay* is not the same as the one at issue here.

Another concern with the Court's analysis is that it suggests the State must present *direct* evidence that Appellant knew she was ineligible to vote. Specifically, the Court's opinion holds that the statute requires proof that Appellant "*actually realized* that these circumstances . . . in fact rendered her ineligible to vote" because the statute "requires actual knowledge of one's ineligibility to vote." *See* Maj. Op. at 17. What does the Court mean by "actual" knowledge or realization in this context? The Penal Code supplies the only definition of knowledge that we should apply here—that is, that "[a] person acts knowingly, or with knowledge, with respect to the nature of [her] conduct or to circumstances surrounding [her] conduct when [s]he is aware of the nature of [her] conduct or that the circumstances exist." TEX. PENAL CODE § 6.03(b). By referring to a person's "actual" realization that she is ineligible to vote, the Court's opinion implies that a heightened standard of knowledge applies here—one that is not rooted in the elements of the offense or the requirements under Penal Code Section 6.03. Such language could be construed as indicating that the State must prove more than a person's simple awareness of the circumstance that she was ineligible to vote. This approach would also conflict with the well-established principle that a person's knowledge may be inferred from the totality of the circumstances. *See, e.g.*, *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."); *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007) (recognizing that "direct evidence of

the elements of the offense is not required" because "[j]uries are permitted to make reasonable inferences from the evidence"). Direct evidence is not required. In short, to the extent that the Court's analysis could be construed as imposing some kind of enhanced knowledge requirement here, I cannot agree with its approach.

**B.** **Remand is unnecessary because the evidence is sufficient to support the verdict.**

After correcting the court of appeals' error in its interpretation of the pre-amendment version of Section 64.012, the Court remands the case for a new sufficiency review. The Court's approach in remanding the case is not unreasonable, but I find it unnecessary. Given the circumstances here, I believe that judicial economy considerations weigh in favor of simply resolving the sufficiency question before us in this proceeding. First, the record in this case is not complex, nor are the facts seriously contested. Instead, the question is really one of law in determining how Section 64.012 should apply to these facts. *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018) (recognizing that sometimes sufficiency review involves construing the reach of the applicable statute to decide whether the evidence establishes a violation of the law). Moreover, the Court in this proceeding has completed much of the necessary analysis by construing the applicable statutory provision along with the new amendment. Under these circumstances, it is most expedient for this Court to reach the sufficiency merits, which are clear-cut if the appropriate level of deference to the fact-finder is applied. *See, e.g.*, *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014) ("[W]hen the proper disposition of an outstanding issue is clear," we may dispose of it on discretionary review "in the name

of judicial economy."). In view of these considerations, I address the merits of Appellant's sufficiency challenge.

### 1. Sufficiency standard

A sufficiency-of-the-evidence challenge requires us to determine "whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). The elements of the offense are determined by the hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under the hypothetically-correct jury charge for this case, the State was required to prove that Appellant: (1) knowingly or intentionally voted or attempted to vote in an election, (2) in which she was not eligible to vote, and (3) she knew she was ineligible to vote. *See* TEX. ELEC. CODE § 64.012(a)(1). Additionally, based on the legislative amendment, the statute further provides that "[a] person may not be convicted solely upon the fact that the person signed a provisional ballot affidavit under Section 63.011 unless corroborated by other evidence that the person knowingly committed the offense." *Id.* § 64.012(c).[2]

### 2. The evidence is sufficient to support the verdict.

Keeping in mind that we must view the evidence in the light most favorable to the verdict, I will examine the evidence supporting the only element at issue here—whether Appellant knew she was ineligible to vote.

---

[2] Although this amendment was enacted in 2021, it applies to any Texas Election Code section 64.012 offense committed before, on or after the effective date of the Act other than final convictions. Because Appellant's petition for discretionary review was still pending upon the effective date of the Act, the amendment applies to this case.

### i.     Appellant's voting experience

The November 2016 election was not the first time Appellant attempted to vote without being registered to do so. In 2004, Appellant was not yet registered to vote but tried to vote anyway. Because she was not registered, she had to fill out an Affidavit of Provisional Voter form. That form included an affirmation that the affiant "had not been finally convicted of a felony; or if a felon, had completed all punishments including any term of incarceration, parole, supervision, or period of probation; or had been pardoned." Maj. Op. at 2. By filling out and signing this form, Appellant learned the requirements for voter eligibility. *See, e.g.*, *Wiley v. State*, 410 S.W.3d 313, 320 (Tex. Crim. App. 2013) (indicating that, "[b]y his signature, the appellant expressly acknowledged having read and understood the conditions of community supervision.").

Appellant's 2004 provisional ballot operated as her voter registration. Thereafter, she voted as a registered voter in the 2008 general election. No provisional ballot was needed. From March 2012 until August 2016, Appellant was incarcerated following a federal felony conviction for conspiring to defraud the United States. During the November 2016 general election, Appellant was on supervised release but she still went to vote at her designated polling location. Precinct workers could not find Appellant's name in their paper records or online database. A precinct volunteer asked Appellant if there was any reason she would not be in their record of registered voters. She responded that she had been living at her same address since 2008. In truth, Appellant lived at the residence until she was incarcerated in March 2012, and then again after she was released from a halfway house in August 2016. The fact-finder could have rationally inferred that Appellant's

voting experience provided her with personal knowledge of voter eligibility and that her statement about living at the same address during the entire preceding eight years was indicative of her intent to hide her status as a felon.

The State also introduced evidence that the local county elections office mailed Appellant two notices concerning her voter ineligibility after her federal conviction. The first notice warned Appellant that the elections office learned of the felony conviction and that her voter registration status would be terminated if she did not provide adequate information establishing her eligibility. This notice was mailed to Appellant's residential address on file in May 2013. The following month, the office mailed a second letter notifying Appellant that her voter registration had been cancelled. Appellant was incarcerated at the time of both notices. Even so, neither notice was returned as undeliverable, and Appellant returned to the same address following her release. Although Appellant did not specify who lived at the residence while she was in prison, she testified that she has three children of her own and cared for her brother's four children as well. Accordingly, the fact-finder could have reasonably inferred that Appellant either received the notices once she returned to the residence in 2016, or that another person living in the home forwarded Appellant's mail to her while she was in prison.

Much of the evidence at trial centered on Appellant's completion of the provisional ballot affidavit. As the Court recognizes, during the pendency of this appeal the Legislature amended the illegal-voting statute to clarify that a defendant "may not be convicted solely upon the fact that the person signed a provisional ballot affidavit . . . unless corroborated by other evidence that the person knowingly committed the offense." TEX. ELEC. CODE §

64.012(c). While the amended statute forbids conviction where the *only* evidence is the completion of a provisional ballot affidavit, it still allows consideration of the affidavit as evidence when the person's knowledge of her ineligibility to vote is *corroborated* by other evidence. As laid out above, such corroboration exists here. Therefore, Appellant's completion of the provisional ballot supports her conviction because it provided additional notice of her ineligibility to vote.

The provisional ballot affidavit includes the following statement that the voter must affirm:

> I . . . have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any terms of incarceration, parole, supervision, a period of probation, or I have been pardoned. . . . I understand that it is a felony of the 2nd degree to vote in an election for which I know I am not eligible.

Two of the State's witnesses testified that they watched Appellant to make sure she read the affidavit before signing it. The precinct volunteer stated that he observed Appellant's finger trace each line as she read the form. The election judge testified that Appellant paused and appeared to read the form prior to completing it, and that if he had believed she did not read it, he would have read it aloud to her before allowing her to sign it. The election judge also testified that he raised his right hand and asked Appellant to affirm that all the information she provided on the form was accurate. And although she denied reading the affidavit before signing, Appellant admitted at trial that the admonishment on the ballot was "very clear" to anyone reading it. Moreover, by signing the affidavit, Appellant is presumed to have read its contents. Therefore, the evidence regarding the provisional ballot affidavit—while alone insufficient—supports Appellant's

conviction in conjunction with the other corroborating evidence showing she knew she was ineligible to vote.

### ii. Appellant's credibility

Part of the fact-finder's responsibility is to assess the credibility of the witnesses. In doing so, the fact finder may believe all, some, or none of a witness's testimony. *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). Applying this concept and in viewing the evidence in the light most favorable to the trial court's verdict, the judge as the trier-of-fact had the evidence needed to support the conviction and clearly did not believe Appellant's self-serving testimony claiming that she did not know she was ineligible to vote.

Appellant's felon status comes from a federal conviction for conspiracy to defraud the United States. The rules of evidence permit the introduction of a prior criminal conviction to attack a witness's character for truthfulness if the offense is a felony or a crime of moral turpitude. TEX. R. EVID. 609(a). Conspiracy to defraud the government is both a felony and a crime of moral turpitude.[3] As a crime of dishonesty, the trial court was authorized to consider Appellant's fraud conviction when assessing her credibility. Further, Appellant's testimony conflicted with the testimony of two State's witnesses. When asked about the differing accounts, she accused both witnesses of lying. Appellant first denied talking with or even seeing the precinct election judge, which contradicted his testimony that he spoke with Appellant about her voter registration status, searched for her name in

---

[3] *See* 18 U.S.C. § 371; *Freedson v. State*, 600 S.W.2d 349, 350 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (citing *Jordan v. De George*, 341 U.S. 223 (1951)) ("Crimes involving fraud have universally been held to involve moral turpitude, and the crime of conspiring to defraud the United States has been held to be a crime involving moral turpitude.").

the paper voter files and online voter database, and helped her with the provisional ballot. Appellant then testified that the precinct volunteer witness lied about observing Appellant's finger trace the words on the ballot form as she read them. In addition, when asked on cross-examination about a newspaper article stating that Appellant admitted to the reporter that she had skimmed the ballot affidavit, Appellant initially denied saying this. She later conceded that she must have said it, but consistently denied making another statement quoted in the article about being targeted for prosecution and suggested that the reporter was untruthful. In all, tasked with the responsibility of making credibility determinations and resolving conflicts in the evidence, the fact-finder could have reasonably concluded that Appellant's fraud conviction negatively impacted her credibility and that it was more likely that Appellant was lying. The fact-finder could have also determined that the other witnesses were credible. As such, it was rational for the fact-finder to disregard Appellant's testimony while accepting the testimony of the other witnesses.

## C.    Conclusion

While I agree that the court of appeals' interpretation of Texas Election Code section 64.012(a)(1) was wrong, there are also flaws in this Court's analysis. First, despite admitting that Election Code 64.012(a)(1) is unambiguous, the Court improperly relies on extratextual sources and our *DeLay* opinion, which is inapplicable here and serves only to confuse the issues. Second, by referring to a person's "actual" realization that she is ineligible to vote, the Court's analysis seems to suggest that the State must present direct evidence of a defendant's knowledge of her ineligibility. This conflicts with the Penal Code's definition of knowledge and the well-established principle that a person's intent

may be inferred from the totality of the circumstances. Finally, given the circumstances here, I believe that judicial economy considerations weigh in favor of simply resolving the sufficiency question in this proceeding because the proper disposition is clear. Viewing the evidence in the light most favorable to the trial court's verdict, the judge as the trier-of-fact had the evidence needed to rationally support the conviction. The statute authorizes consideration of the provisional ballot affidavit when it is corroborated by other evidence. Appellant's completion of the affidavit was corroborated by her voting history, eyewitness testimony suggesting Appellant actually read the provisional ballot affidavit language, and the two notices informing Appellant that her voter registration was revoked. The trial court was not obligated to believe Appellant's self-serving testimony that she was unaware of her ineligibility to vote. Accordingly, in the interest of judicial economy and because there is sufficient evidence for the trial court to have rationally found that Appellant was aware of her ineligibility to vote, I would resolve this issue here and overrule Appellant's first ground for review. For these reasons, I respectfully dissent.

FILED: May 11, 2022
PUBLISH