**Opinion issued February 6, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00650-CR

————————————

**ANSEL PENNYGRAPH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1817185**

---

## MEMORANDUM OPINION

A jury convicted appellant Ansel Pennygraph of the first-degree felony offense of engaging in organized criminal activity based on the predicate offenses of aggregate theft and tampering with a governmental record. *See* TEX. PENAL CODE §§ 71.02(a)(1), (13), (b). The jury also found that he used or exhibited a deadly

weapon during commission of the offense, and it assessed his punishment at thirty-five years' confinement. In his sole issue on appeal, Pennygraph contends that legally insufficient evidence supported his conviction because aggregate theft is not a statutorily authorized predicate offense of engaging in organized criminal activity. We affirm, largely because a case decided by this Court after the close of the briefing forecloses Pennygraph's argument here. *See Yonko v. State*, — S.W.3d —, No. 01-23-00062-CR, 2024 WL 4594131 (Tex. App.—Houston [1st Dist.] Oct. 29, 2024, pet. filed).

## Background

Between 2016 and 2023, Pennygraph worked with others to steal wheels and tires off numerous vehicles around the Houston area. During the thefts, Pennygraph drove a white minivan with a stolen license plate. He and others would find parked cars in the middle of the night, remove the wheels and tires, leave the wheelless vehicles on concrete blocks, and load the wheels and tires into the minivan. Pennygraph and others stored the stolen wheels and tires in a warehouse, and they sold them through Facebook Marketplace. Pennygraph also attempted to steal an $80,000 vehicle, but the owner caught him and shot a firearm at the white minivan.

Law enforcement became aware of the thefts and began surveilling the warehouse. Officers saw Pennygraph frequent the warehouse, unload wheels and tires from the minivan, and store them in the warehouse. They also saw Pennygraph

2

load wheels and tires into the minivan and leave the warehouse, which corresponded to deliveries of wheels and tires sold through Facebook Marketplace. Pennygraph was eventually arrested after leading police on car chases. He wore a GPS ankle monitor during some of the thefts, and data from the monitor showed that he was present at the locations of these thefts around the time they occurred.

Police obtained a warrant and searched the warehouse. They discovered fifty-six wheels and tires; a loaded revolver; a Halloween mask; various license plates, including one that was stolen; two stolen motorcycles; two stolen motor vehicles; and a stolen scooter. Police also obtained a warrant to search Pennygraph's cell phone. They found text messages between Pennygraph and others discussing the thefts and subsequent resale of wheels and tires. Additionally, police obtained a warrant to search Pennygraph's apartment, where they found registration documents for the white minivan. The value of stolen wheels and tires connected to Pennygraph totaled more than $150,000.

Pennygraph was indicted for the first-degree felony offense of engaging in organized criminal activity based on two predicate offenses: aggregate theft of property valued between $150,000 and $300,000 and tampering with a governmental record. *See* TEX. PENAL CODE § 71.02(a)(1), (13). The indictment contained three enhancement paragraphs. The first two paragraphs alleged that Pennygraph used or exhibited two deadly weapons—a firearm and a motor vehicle, respectively—during

commission of the offense. The third paragraph alleged that Pennygraph had a prior conviction for the felony offense of assault of a family member by choking. *See id.* § 12.42(c)(1) (raising minimum punishment to fifteen years' imprisonment on trial of first-degree felony if State proves that defendant was previously finally convicted of felony other than state jail felony). Pennygraph did not object to the indictment.

The jury found Pennygraph guilty of engaging in organized criminal activity based on aggregate theft between $150,000 and $300,000 and tampering with a governmental record, and it found that he used or exhibited a deadly weapon during commission of the offense.[1] During the punishment phase, the jury did not find that Pennygraph had committed a prior felony offense. The jury sentenced him to thirty-five years' confinement. This appeal followed.

---

[1] As stated above, Pennygraph was indicted for engaging in organized criminal activity based on two predicate offenses: aggregate theft and tampering with a governmental record. The predicate offense of aggregate theft made the engaging offense a first-degree felony, while the predicate offense of tampering made the engaging offense a second-degree felony. *See* TEX. PENAL CODE §§ 71.02(b) ("[A]n offense under this section is one category higher than the most serious [predicate] offense . . . that was committed."), 31.03(e)(6)(A) (providing that theft between $150,000 and $300,000 is second-degree felony), 37.10(c)(1) (providing that tampering with governmental record with intent to defraud or harm another is state jail felony), 12.35(c)(1) (providing that state jail felony offense may be enhanced to third-degree felony if jury finds deadly weapon was used or exhibited during commission of offense). Pennygraph does not challenge his conviction for engaging based on the predicate offense of tampering with a governmental record. However, because the engaging offense based on the tampering predicate is a second-degree felony, he requests that this Court reform the judgment to reflect a conviction for a second-degree felony offense and remand for a new trial on punishment.

**Aggregate Theft as a Predicate Offense**

In his sole issue on appeal, Pennygraph argues that the evidence was legally insufficient to support his conviction because aggregate theft is not a statutory predicate offense of engaging in organized criminal activity. This issue presents a pure question of statutory interpretation. Pennygraph does not argue that the evidence was insufficient to otherwise prove the elements of the engaging offense or to prove the aggregate theft predicate offense.

## A. Standard of Review

The parties agree that the proper standard of review in this appeal is the standard for legal sufficiency of the evidence.[2] In conducting a legal sufficiency

---

[2] In a sense, Pennygraph's issue appears to challenge the sufficiency of the indictment rather than the sufficiency of the evidence. As the State correctly notes, Pennygraph "does not challenge the sufficiency of the evidence in his case in the traditional sense" because "he does not claim that the actual evidence presented against him at trial is insufficient to support the essential elements" of engaging in organized criminal activity, aggregate theft, and tampering with a governmental record. The distinction matters because Pennygraph did not object to any alleged defect, error, or irregularity in the form or substance of the indictment before trial. *See* TEX. CODE CRIM. PROC. art. 1.14(b). In *Yonko v. State*, this Court held that the defendant failed to preserve for appellate review a substantively identical issue by failing to object to the indictment. *See* — S.W.3d —, No. 01-23-00062-CR, 2024 WL 4594131, at *9 (Tex. App.—Houston [1st Dist.] Oct. 29, 2024, pet. filed). However, we also acknowledge that the Court of Criminal Appeals has applied a legal sufficiency standard to review a similar issue even in the absence of an objection. *See Walker v. State*, 594 S.W.3d 330, 336–37 (Tex. Crim. App. 2020) (applying legal sufficiency standard of review to determine whether possession of controlled substance with intent to deliver is proper predicate offense under engaging statute and stating that "in some cases, sufficiency of the evidence also turns on the meaning of the statute under which the defendant has been prosecuted"). We need not resolve this sub-issue today, however, because the parties agree that Pennygraph's issue is properly before us and that the proper standard of review is

5

review, we generally review the evidence to determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from it. *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). However, sufficiency of the evidence can also turn on the meaning of the statute under which the defendant was prosecuted. *Id.* at 336. In this circumstance, we consider whether certain conduct actually constitutes an offense under the relevant statute. *Id.*

We review issues of statutory construction de novo. *Id.* When interpreting a statute, we strive to effectuate the collective intent or purpose of the Legislature. *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019). We read the statute as a whole and apply the plain meaning of the statutory language unless the statute is ambiguous or the plain meaning leads to an absurd result. *Id.*; *see Lang v. State*, 561 S.W.3d 174, 180 (Tex. Crim. App. 2018) (stating that statute is ambiguous when reasonably well-informed persons may understand it in two or more different senses, and statute is unambiguous when it reasonably permits only one understanding) (quotation and citation omitted). To determine the plain meaning, we consider the statute's literal text and construe the words according to rules of grammar and usage. *Hughitt*, 583 S.W.3d at 627. We presume that every word in a statute has been used

---

legal sufficiency of the evidence, and resolution of this sub-issue will not affect the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. *Id.*

**B.    Analysis**

Pennygraph argues that the engaging statute enumerates "theft" as a predicate offense, but it does not enumerate "aggregate theft" as a predicate offense. He further argues that theft and aggregate theft are separate offenses, and therefore aggregate theft is not a proper predicate offense under the engaging statute. The State responds that theft and aggregate theft are not separate offenses, and therefore aggregate theft is part of the enumerated predicate offense of theft.

Pennygraph was charged with and convicted of engaging in organized criminal activity based on the predicate offense of aggregate theft between $150,000 and $300,000. Relevant here, Penal Code section 71.02 provides that a person commits the offense of engaging if—with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang—the person commits or conspires to commit one or more predicate offenses, including "theft."[3] TEX. PENAL CODE § 71.02(a)(1). Section

---

[3]    Section 71.01 defines "combination" as "three or more persons who collaborate in carrying on criminal activities, although: (1) participants may not know each other's identity; (2) membership in the combination may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations." TEX. PENAL CODE § 71.01(a). That section defines "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." *Id.* § 71.01(d).

71.02 lists only "theft" as a predicate offense; it does not list "aggregate theft" as a separate predicate offense. *See id.* § 71.02(a). The punishment category of engaging is "one category higher than the most serious [predicate] offense . . . that was committed." *See id.* § 71.02(b).

Section 31.03 provides that a person commits the offense of theft if the person unlawfully appropriates property with intent to deprive the owner of the property. *Id.* § 31.03(a). Section 31.09 provides for aggregation of multiple thefts:

> When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.

*Id.* § 31.09. If, as here, the aggregate value of stolen property is between $150,000 and $300,000, the theft offense is a second-degree felony. *See id.* § 31.03(e)(6)(A). The Legislature's main purpose in adding section 31.09 was "to allow for aggregation of each theft into a single offense to increase the punishment range for a thief who commits various thefts 'pursuant to one scheme or continuous course of conduct.'" *State v. Weaver*, 982 S.W.2d 892, 895 (Tex. Crim. App. 1998) (quotation omitted).

Scant caselaw addresses the question presented here: whether aggregate theft is theft for purposes of the engaging statute. After the parties submitted their appellate briefs in this case, however, a separate panel of this Court addressed this issue.

In *Yonko v. State*, a jury convicted Yonko of engaging in organized criminal activity based on the predicate offense of aggregate theft. 2024 WL 4594131, at *1, 3. On appeal, Yonko argued that "aggregate theft" is not specifically enumerated as a predicate offense in the engaging statute. *Id.* at *8. The State responded that theft is an enumerated predicate offense, and aggregate theft is not distinct from theft for purposes of the engaging statute. *Id.*

Yonko relied on precedent from the Court of Criminal Appeals holding that the aggregate theft statute "adequately creates a separate offense and defines conduct for purposes of jurisdiction, punishment and period of limitation from prosecution." *Id.* at *9 (quoting *Graves v. State*, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990)). But this Court rejected the contention that this holding resolved whether aggregate theft was a separate offense for all purposes. *Id.* at *10–11. The holding was limited to certain purposes and did not address whether aggregate theft is a separate offense for purposes of the engaging statute. *Id.* at *10.

Moreover, this Court concluded that principles of statutory construction did not support Yonko's interpretation of the engaging statute. First, section 31.09 "references [Chapter 31 concerning theft] as a whole in explaining aggregation," thereby "inextricably linking" section 31.09 to the other theft provisions in Chapter 31. *Id.* Additionally, section 31.09 does not contain a separate actus reus or mens rea

apart from section 31.03 defining theft. *Id.* Thus, section 31.09 is "interrelated" to "Chapter 31 as a whole." *Id.*

Furthermore, the Court noted that the engaging statute provides that a person commits an offense if the person commits or conspires to commit "one or more of the following: . . . theft." *Id.* at *11 (quoting TEX. PENAL CODE § 71.02(a)(1)). A "plain reading" of this language "supports a conclusion that thefts may be aggregated to enhance the grade of the offense." *Id.* Thus, if a person commits "one or more" thefts while engaging in organized criminal activity, then "Chapter 31's aggregation provision should be read in connection with the engaging statute to permit stacking of those theft totals to reach a higher dollar amount, as would be permissible if the defendant committed multiple thefts but did not engage in organized criminal activity in the commission of those thefts." *Id.* The Court concluded that aggregate theft is not a separate offense from theft for purposes of the engaging statute. *Id.*

*Yonko* is the only published decision directly addressing Pennygraph's appellate issue. *See id.* at *10 ("[N]o reported cases have addressed this issue."). Like Yonko, Pennygraph relies on decisions from the Court of Criminal Appeals to support his argument that aggregate theft is a separate offense from theft. In each of these cases, however, the court held that aggregate theft is "one offense" separate from the underlying thefts committed pursuant to one scheme or continuing course

10

of conduct for the limited purposes of severance, jurisdiction, punishment, limitations, and venue.

For example, in *Wages v. State*, the defendant was charged with one felony offense of aggregate theft based on three underlying misdemeanor theft offenses committed in one scheme and continuous course of conduct. 573 S.W.2d 804, 805–06 (Tex. Crim. App. 1978). The defendant argued on appeal that his counsel was ineffective for failing to request a severance of the three underlying theft offenses. *Id.* at 806. The Court of Criminal Appeals described section 31.09 as an "aggregation principle" that "operates to create One offense"—aggregate theft—when multiple thefts occur pursuant to a single scheme and continuing course of conduct, and it concluded that a court cannot sever one offense. *Id.* at 806.

In *Graves v. State*, the trial court dismissed an indictment for felony aggregate theft based on eighteen underlying misdemeanor thefts by relying on the shorter limitations period for misdemeanor offenses rather than the longer period for felony offenses. 795 S.W.2d at 186. The court of appeals agreed with the State that the longer statute of limitations for felony offenses applied, and it reversed the dismissal of the indictment. *Id.* The Court of Criminal Appeals affirmed, holding that although aggregated theft consists of multiple incidents of theft, "Section 31.09 adequately creates a separate offense" from the underlying thefts "and defines conduct for purposes of jurisdiction, punishment and period of limitation from prosecution." *Id.*

11

at 187. Be that as it may, *Yonko* addressed *Graves* and found it inapposite. *See* 2024 WL 4594131, at *9–10.

In *State v. Weaver*, the defendant was indicted in Harris County for aggregate theft consisting of thirty-two underlying thefts committed both in Harris County and in other counties. 982 S.W.2d at 893. The trial court severed the non-Harris County thefts from the indictment, effectively reducing the offense from a third-degree felony to a state jail felony, and the State appealed. *Id.* The Court of Criminal Appeals reiterated its prior holdings that "Section 31.09 creates one offense for purposes of severance, jurisdiction, punishment and limitations." *Id.* at 894. The court then extended the holding to venue disputes: "Therefore, we decide Section 31.09 creates one offense for purposes of venue." *Id.*

Finally, in *Kent v. State*, the Court of Criminal Appeals reaffirmed these prior decisions in the context of a jury-unanimity challenge. *See* 483 S.W.3d 557 (Tex. Crim. App. 2016). After surveying prior cases, the court reiterated that "Section 31.09 creates one offense for purposes of severance, jurisdiction, punishment, limitations, and venue." *Id.* at 561–62. Then, the court took the next step in *Kent* and held that jurors did not need to be instructed about each theft underlying an aggregate theft offense or unanimously agree about the commission of each underlying theft. *Id.* at 562.

12

None of the cases relied upon by Pennygraph address the issue presented here: whether aggregate theft is theft within the meaning of the engaging statute. Instead, these cases stand for the proposition that aggregate theft is considered as one offense separate from the underlying thefts for limited purposes, including severance, jurisdiction, punishment, limitations, and venue. *See, e.g.*, *id.* at 561–62; *see also* TEX. PENAL CODE § 31.09 (providing that amounts obtained by multiple thefts pursuant to one scheme or continuing course of conduct "*may be considered as one offense*") (emphasis added). Thus, the cases Pennygraph relies on do not support his argument that aggregate theft is a separate offense from theft for purposes of the engaging statute.

The aggregate theft statute expressly states that when amounts are obtained by multiple thefts pursuant to one scheme or continuing course of conduct, "the conduct *may be considered as one offense* and the amounts aggregated in determining the grade of the offense." TEX. PENAL CODE § 31.09 (emphasis added). The statute does not state that aggregate theft is a separate offense from theft, only that the conduct may be *considered* as one offense. *See id.*; *Hughitt*, 583 S.W.3d at 626–27 (stating that courts interpret statutes to effectuate legislative intent, apply plain meaning of legislative text, and determine plain meaning of text by considering literal text and construing words according to rules of grammar and usage).

Moreover, under *Yonko*, section 31.09 references and applies to the theft offenses in Chapter 31 as a whole, and section 31.09 does not contain a separate actus reus or mens rea apart from the other theft offenses in Chapter 31. *See Yonko*, 2024 WL 4594131, at *10; Tex. Penal Code § 1.07(a)(22) (defining "element of offense" as forbidden conduct, required culpability, required result, and negation of any exception to offense); *Kent*, 483 S.W.3d at 561 ("[T]he text of Section 31.09 shows a legislative intent to treat the 'scheme or continuing course of conduct' as the culpable criminal behavior rather than each individual theft used to prove the scheme or course of conduct."); *King v. State*, 17 S.W.3d 7, 13 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (noting that "essential elements" of aggregate theft are found in section 31.03(a)). Section 31.09 merely allows amounts obtained by multiple thefts pursuant to one scheme or continuing course of conduct to be aggregated and considered as one offense in determining the grade of the offense. *See* Tex. Penal Code § 31.09. Thus, a plain reading of section 31.09 leads to the conclusion that aggregate theft "may be considered as one offense" for some but not all purposes, but aggregate theft is not a separate offense from theft. *See Hughitt*, 583 S.W.3d at 626–27.

As stated in *Yonko*, the engaging statute applies when a person commits or conspires to commit "one or more" predicate offenses, including "theft." 2024 WL 4594131, at *11 (quoting Tex. Penal Code § 71.02(a)(1)). The Legislature's

14

authorization to base an engaging offense on multiple predicate offenses, including multiple thefts, "supports a conclusion that thefts may be aggregated to enhance the grade of the offense." *Id.*; *see Hughitt*, 583 S.W.3d at 627.

Pennygraph's counsel has very capably and professionally presented his arguments, but they run afoul of *Yonko*. For the reasons stated, we hold that aggregate theft is "theft" within the meaning of the engaging statute, and therefore aggregate theft is a proper predicate offense of engaging in organized criminal activity. Because Pennygraph does not present any other sufficiency arguments for our consideration, we conclude that the evidence was legally sufficient to support the conviction.

## Conclusion

We affirm the trial court's judgment of conviction.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).